**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| WIKIMEDIA FOUNDATION, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:15-cv-00662-TSE |
| NATIONAL SECURITY AGENCY, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MOTION TO SET A STATUS CONFERENCE

Defendants respectfully request that the Court set a status conference in the above-captioned case to address how dispositive briefing in this matter should proceed. The parties have conferred in good faith and at length regarding the sequence and timing of dispositive motions, but have been unable to reach an agreement.

Defendants submit that the Court should address threshold jurisdictional issues, through a motion to dismiss, before the parties and the Court invest extensive time and effort in briefing and considering the merits of Plaintiffs' claims. Plaintiffs have indicated, to the contrary, that they may move for summary judgment on all of their claims at any time. An orderly approach to the handling of this matter is important, not only to ensure that the Court's and the parties' resources are used efficiently, but also to accommodate important interests of the Government. The requested status conference would provide the parties an opportunity to present their respective positions, and allow the Court to determine the best way to move this case forward.[1]

---

[1] Plaintiffs have indicated that they would respond to this submission by Tuesday, April 28, 2015.

## DISCUSSION

Defendants intend to move to dismiss the Complaint, ECF No. 1, under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because they contend that Plaintiffs have not adequately pled their standing. In particular, while the Complaint challenges the National Security Agency's ("NSA") "Upstream" collection of certain electronic communications pursuant to Section 702 of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1881a, *see* Compl. ¶ 1, Plaintiffs have not affirmatively and plausibly alleged that their communications have been subject to Upstream collection by the NSA.

Defendants submit that *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013), presents an insurmountable barrier to Plaintiffs' efforts to establish standing to assert their claims. In that case, plaintiffs—six of which are plaintiffs here—sought to maintain a facial constitutional challenge to Section 702, the same statute under which the NSA conducts the Upstream program challenged here. The Supreme Court rejected the plaintiffs' challenge for lack of Article III standing. The Court noted that its standing inquiry is "especially rigorous when reaching the merits of the dispute would force" the Court—as Plaintiffs ask it to do here— "to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Amnesty Int'l, USA*, 133 S. Ct. at 1147. The Court also observed the frequency with which it had "found a lack of standing in cases in which the Judiciary has been requested to review actions of the political branches in the fields of intelligence gathering and foreign affairs." *Id.* Ultimately, without addressing the merits of plaintiffs' claims, the Court held that the plaintiffs had failed to establish their standing (at the summary judgment stage) because, *inter alia*, it was "speculative whether the Government will imminently target communications to which [they] are parties." *Id* at 1148.

The same conclusion was reached by the court in *Jewel v. NSA*, 2015 WL 545925 (N.D. Cal. Feb. 10, 2015), in which the plaintiffs moved—as Plaintiffs wish to do here—for summary judgment on a purported Fourth Amendment claim challenging the NSA's Upstream collection. The plaintiffs in *Jewel* offered factual affidavits in an effort to establish their standing, and pointed to the same official disclosures, *see* Compl. ¶ 10, about Upstream collection. *See id.* at *2–4. The *Jewel* court nevertheless held that the plaintiffs had "failed to proffer sufficient admissible evidence to support [their] standing," *id.* at *4, and therefore declined to reach the merits of the plaintiffs' Fourth Amendment challenge to Upstream collection.

Defendants respectfully suggest that the Court can and therefore should do the same here. *Jewel,* together with *Amnesty International*, demonstrates that the time and resources of the parties and the Court should not be invested in addressing the merits of a constitutional challenge to the Executive's actions in the field of intelligence gathering, when there are, at a minimum, serious questions regarding whether plaintiffs have adequately pled their standing.

In light of the Defendants' forthcoming motion to dismiss, the Court should set a status conference to establish an orderly way forward for these proceedings:  1) to prevent waste and procedural confusion resulting from multiple, concurrent dispositive motions; 2) to promote important policy interests against consideration of the state secrets privilege until it is necessary to do so; and 3) to resolve significant scheduling issues regarding which the parties have been unable to reach agreement.

**1.      A Framework for Dispositive Motions is Needed to Prevent Waste and Procedural Confusion.**

As discussed below, Defendants intend to move to dismiss the Complaint on jurisdictional grounds by May 29, 2015.  Plaintiffs, on the other hand, have indicated that they may move for summary judgment as to all of their claims at any time, including while the motion

3

to dismiss is pending.  If Plaintiffs were to file such a motion, the Government would be required to cross-move for summary judgment and respond to the merits of their claims.  The resulting cross-motions would largely render wasted any time and effort the parties will have invested in briefing the threshold issues raised by Defendants' motion to dismiss.

**2.      The Government should not be required to consider invoking the state secrets privilege until it is necessary to do so.**

In addition, as explained below, litigation of Plaintiffs' claims on summary judgment may put at issue the disclosure of information subject to the state secrets privilege.  For this reason, too, the Court should establish a schedule for these proceedings that ensures the question of standing at the pleading stage is resolved before Cabinet-level officials (and perhaps thereafter the Court itself) are required to consider an assertion of that privilege and its impact on the case.

Classified operational details concerning Upstream collection put at issue in Plaintiffs' Complaint may be subject to an assertion of the state secrets privilege.  As noted by the court in *Jewel*, the plaintiffs' Fourth Amendment challenge to Upstream collection implicated classified information about the scope and operational details of that program. 2015 WL 545925, at *4. Those classified details were subject to a pre-existing claim of the state secrets privilege in that case by the Director of National Intelligence.  *See id.* at *5.  Litigating the similar claims Plaintiffs would likely raise on summary judgment here would again require the Government to consider whether it is necessary to assert the state secrets privilege in this case.

This Court has inherent powers to structure and order proceedings to resolve threshold jurisdictional issues before embarking on litigation of the merits that could lead to a Government assertion of the state secrets privilege. *Cf. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995).  The state secrets privilege "is not to be lightly invoked," *United States v. Reynolds*, 345 U.S. 1, 7 (1953), and, in part for this reason, the Court should

look favorably upon the consideration of alternative grounds for disposing of a case, such as deciding whether Plaintiffs have sufficiently pled their standing, in order to avoid "forcing a showdown on the claim of privilege." *Reynolds*, 345 U.S. at 10–11; *cf. Cheney v. U.S. Dist. Court*, 542 U.S. 367, 390 (2004) (encouraging courts "whenever possible" to "explore other avenues" to avoid forcing an assertion of Executive privilege that may not be necessary); *Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C. Cir. 1968) (matters of privilege should "appropriately be deferred").

This is all the more so when the Court, by proceeding in this manner, can avoid unnecessarily and prematurely imposing a significant burden on Cabinet-level officials at this early stage of litigation. "[A] formal claim of [the state secrets] privilege [must be] lodged by the head of the department . . . after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7–8. The Attorney General's Memorandum Governing Invocation of the State Secrets Privilege, *see* http://www.justice.gov/sites/default/files/opa/legacy/2009/09/23/state-secret-privileges.pdf, establishes significant procedural and substantive requirements that must be followed prior to asserting the privilege. *Id.* at 2–3. As the Memorandum explains, the purpose of these requirements is to ensure that careful and serious consideration is given to the decision, and "to strengthen public confidence that the U.S. Government will invoke the privilege in court only when genuine and significant harm to national defense or foreign relations is at stake and only to the extent necessary to safeguard those interests." *Id.* at 1. The result is that consideration of whether to invoke the state secrets privilege here would involve senior Executive Branch officials, including all three of the highest-ranking officials in the Department of Justice as well as the Director of National Intelligence and the Director of the NSA. *See Reynolds*, 345 U.S. at 7–8; Memorandum at 2–3 & n.2.

High-ranking Government officials should not be diverted from their critical law enforcement and national security duties to personally consider the issues involved in invoking the state secrets privilege here unless and until it becomes unavoidably necessary for purposes of this litigation. As other courts have recognized in other contexts, "public policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases." *Community Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983); *cf. In re: FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) ("High ranking government officials have greater duties and time constraints" than other government employees).[2]

**3.    A status conference is also needed to resolve important scheduling issues.**

In the course of conferring about the appropriate way forward in this case, counsel for Plaintiffs and Defendants discussed—but were unable to reach agreement regarding—appropriate deadlines for any dispositive motions and related briefing. The requested status conference would allow the Court to hear the parties' positions on these matters and to establish an appropriate schedule.

In the first instance, Defendants respectfully request that the Court set the following schedule and page limitations for briefing related to their forthcoming Rule 12(b)(1) motion to dismiss:

---

[2] The foregoing concerns would arise here notwithstanding the fact that the state secrets privilege assertion in *Jewel* also encompassed information concerning Upstream. Before asserting privilege here, responsible Cabinet-level officials would be required, under *Reynolds* and the Attorney General's policy, to undertake a separate personal review of the matter, including the privileged information needed to address the specific claims in this case, and to tailor any assertion of privilege to the allegations and circumstances here. The process for doing so would again require considerable time and attention by these officials, and should not be undertaken unless the Court determines that it has jurisdiction to hear this case in the first instance.

| | |
|---|---|
| May 29, 2015[3] | Defendants' motion to dismiss (35 pages) |
| July 1, 2015 | Plaintiffs' opposition to Defendants' motion (35 pages) |
| July 24, 2015 | Defendants' reply (20 pages) |

In the event the Court decides to proceed with cross-motions for summary judgment, rather than sequencing any such briefing after the resolution of Defendants' Rule 12(b)(1) motion, Defendants respectfully propose an alternative briefing schedule below that accommodates the Government's important interests in considering whether to assert the state secrets privilege, as well as the schedule of counsel. The Plaintiffs have previously indicated that they may move for summary judgment as to all of their claims at the end of May.[4] In light of Plaintiffs' previously-stated intention, Defendants suggest the following alternative schedule:

| | |
|---|---|
| May 29, 2015 | Plaintiffs' motion for summary judgment (45 pages) |
| July 24, 2015 | Defendants' opposition to Plaintiffs' motion and motion to dismiss and/or cross-motion for summary judgment (60 pages), and related classified submissions if the state secrets |

---

[3] Although Defendants previously believed that Plaintiffs had effected service on March 10, 2015, upon closer inspection, Defendants discovered that service was defective because Plaintiffs did not address the summons and complaint to the U.S. Attorney's Office's civil-process clerk, *see* Copy of Service Envelope, attached hereto as Exhibit 1, as required by Federal Rule of Civil Procedure Rule 4(i)(1)(A)(ii). *See, e.g.*, *Vargas v. Potter*, 792 F. Supp. 2d 214, 217 (D.P.R. 2011) (noting that failure to address the summons and complaint to the civil-process clerk constituted a failure to effect service); *Rhodes v. IRS*, 2010 WL 5392636, at *4 (D. Az. Dec. 28, 2010); *Rushing v. Leavitt*, 2005 WL 555415, at *11–12 (D.D.C. Mar. 7, 2005); *Sun v. United States*, 342 F. Supp. 2d 1120, 1123–24 (N.D. Ga. 2004); *see also* Charles Alan Wright & Arthur R. Miller *et al.*, Federal Practice & Proc. § 1106 (2014) ("service must be specifically addressed to the civil process clerk"). Nonetheless, in the interest of moving this case forward, Defendants are prepared to waive the requirements of Rule 4(i)(1)(A)(ii) and to submit their response to the Complaint on May 29, 2015.

[4] Plaintiffs have since indicated that they are reconsidering how they will proceed with a motion for summary judgment, should they choose to file one.

|  |  |
|---|---|
|  | privilege is asserted |
| August 28, 2015 | Plaintiffs' reply on motion for summary judgment and opposition to Defendants' motion (45 pages) |
| September 14, 2015 | Defendants' reply (30 pages) and related classified submissions if the state secrets privilege is asserted |

As noted above, senior Cabinet-level officials at three different agencies would be called upon to give serious consideration to the invocation of the state secrets privilege in this case if summary judgment briefing proceeds, and if a decision to assert privilege is reached, the Government would require the time to prepare declarations and materials to explain in detail the basis for the privilege to the Court and its impact on this case.  In addition, if the state secrets privilege is asserted, Defendants would require time to prepare both an unclassified brief and any supporting declarations to address the merits of Plaintiffs' claims (so far as possible on the public record), and in all likelihood separate classified submissions supporting the claim of privilege and explaining why Plaintiffs' claims cannot be fully and fairly litigated without the privileged information.

The above-proposed schedule would not only allow Defendants time to prepare that extensive briefing, it would also accommodate the pre-planned, pre-paid international vacation schedule of the Government's lead counsel, who will be out of the country from June 12 through June 29.

Whether or not the Court adopts the above-proposed alternative schedule, the Defendants respectfully request that any briefing schedule entered for summary judgment motions in this matter accommodate these previously-scheduled plans, and provide the Government sufficient time to complete the work necessary to a potential assertion of the state secrets privilege.

The requested status conference would serve as a vehicle to address these scheduling matters expeditiously, and to ensure that dispositive briefing in this case proceeds in an orderly manner.

## CONCLUSION

For all of the reasons discussed above, Defendants respectfully request that the Court set a status conference to hear from the parties and create an appropriate schedule for dispositive motions in this case.

Dated: April 24, 2015　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　BENJAMIN C. MIZER
　　　　　　　　　　　　　　　　　　　　　　Principal Deputy Assistant Attorney General

　　　　　　　　　　　　　　　　　　　　　　JOSEPH H. HUNT
　　　　　　　　　　　　　　　　　　　　　　Director, Federal Programs Branch

　　　　　　　　　　　　　　　　　　　　　　ANTHONY J. COPPOLINO
　　　　　　　　　　　　　　　　　　　　　　Deputy Branch Director

　　　　　　　　　　　　　　　　　　　　　　JAMES J. GILLIGAN
　　　　　　　　　　　　　　　　　　　　　　Special Litigation Counsel


　　　　　　　　　　　　　　　　　　　　　　 /s/ Julia A. Berman
　　　　　　　　　　　　　　　　　　　　　　RODNEY PATTON
　　　　　　　　　　　　　　　　　　　　　　Trial Attorney

　　　　　　　　　　　　　　　　　　　　　　JULIA A. BERMAN
　　　　　　　　　　　　　　　　　　　　　　Trial Attorney

　　　　　　　　　　　　　　　　　　　　　　U.S Department of Justice
　　　　　　　　　　　　　　　　　　　　　　Civil Division, Federal Programs Branch
　　　　　　　　　　　　　　　　　　　　　　20 Massachusetts Ave., N.W., Room 5102
　　　　　　　　　　　　　　　　　　　　　　Washington, D.C.  20001
　　　　　　　　　　　　　　　　　　　　　　Phone: (202) 616-8480
　　　　　　　　　　　　　　　　　　　　　　Fax: (202) 616-8470
　　　　　　　　　　　　　　　　　　　　　　julia.berman@usdoj.gov
　　　　　　　　　　　　　　　　　　　　　　Counsel for Defendants