**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

WIKIMEDIA FOUNDATION,

      *Plaintiff*,

      v.

NATIONAL SECURITY AGENCY /
CENTRAL SECURITY SERVICE, *et al.*,

      *Defendants*.

Hon. T. S. Ellis, III

Civil Action No.
15-cv-00662-TSE

## PLAINTIFF'S BRIEF ADDRESSING HOW THIS MATTER SHOULD PROCEED IN RESPONSE TO THE COURT'S ORDER OF AUGUST 2, 2017

Pursuant to the Court's Order of August 2, 2017 (ECF No. 105), Plaintiff Wikimedia Foundation writes to address how discovery and dispositive motion practice should go forward following remand from the Fourth Circuit. The case should now proceed in the ordinary course. Although the government seeks, once again, to confine the litigation solely to standing questions—either by mounting a factual challenge to Plaintiff's standing under Rule 12(b)(1) or by bifurcating summary judgment proceedings—neither course is appropriate. Fourth Circuit precedent bars Defendants from bringing a factual challenge under Rule 12(b)(1) when the jurisdictional facts are intertwined with the merits, as they are here. If the government wishes to dispute the fact that it is seizing and searching some of Wikimedia's trillion or more international communications each year, that is a fact that goes to the heart of Wikimedia's Fourth Amendment and other claims. As a result, the litigation must proceed under Rule 56 after discovery related to Plaintiff's claims. Further, the government's fallback proposal that the case now be bifurcated would be a stark departure from ordinary practice, and would be inefficient for

both the Court and the parties. The inefficiency that bifurcation would cause is particularly problematic in a case where litigation over standing questions has already consumed more than two years even as Defendants' unlawful warrantless surveillance of Plaintiff's internet communications continues. The parties should accordingly conduct discovery as necessary and should then file one set of motions that will allow the Court to expeditiously address both standing and the merits.

## Background

In March 2015, nine Plaintiff organizations filed suit against the National Security Agency ("NSA") and other government Defendants, challenging the suspicionless seizure and searching of their internet traffic by the NSA on U.S. soil. Plaintiffs alleged that this surveillance dragnet, called "Upstream" surveillance, violates the First and Fourth Amendments and exceeds the scope of the authority that Congress provided in the FISA Amendments Act of 2008 ("FAA"). In addition, Plaintiffs alleged that the surveillance violates Article III of the Constitution because it is predicated on programmatic surveillance orders issued by the Foreign Intelligence Surveillance Court in the absence of any case or controversy. Plaintiffs amended their complaint as of right in June 2015. *See* Am. Compl. (ECF No. 72).

Defendants subsequently moved to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(1) for failure to plausibly allege Article III standing. *See* Defs.' Mot. Dismiss 2–3 (ECF No. 77). This Court granted Defendants' motion to dismiss on October 23, 2015. *Wikimedia Found. v. NSA*, 143 F. Supp. 3d 344 (D. Md. 2015). It concluded that Plaintiffs' standing allegations were not plausible under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013).

Plaintiffs appealed that decision, and on May 23, 2017, the Fourth Circuit panel unanimously held that Wikimedia had plausibly alleged standing to challenge Upstream surveillance. *Wikimedia Found. v. NSA*, 857 F.3d 193, 209–13 (4th Cir. 2017). With respect to the other eight Plaintiffs, the court divided: the majority, consisting of Judges Motz and Diaz, held that the other Plaintiffs' allegations of standing were not plausible, whereas Judge Davis in dissent believed that the non-Wikimedia Plaintiffs also had standing to proceed to the next stage of the case. *See id.* at 213–16, 217–20. The Fourth Circuit vacated the portion of this Court's judgment dismissing the complaint as to Wikimedia, and it remanded the case for proceedings consistent with its opinion. *Id.* at 217.

I.      **A Factual Challenge to Plaintiff's Standing Must Be Brought Under Rule 56.**

To ensure that discovery and motion practice proceed in an expeditious and orderly fashion, Plaintiff respectfully requests that the Court hold that a factual challenge to standing be brought under Rule 56, not Rule 12(b)(1). As discussed below, because the jurisdictional and merits questions in this case are intertwined, Fourth Circuit precedent precludes Defendants from bringing a factual challenge under Rule 12(b)(1). *See, e.g.*, *Adams v. Bain*, 697 F.2d 1213, 1219–20 (4th Cir. 1982).

The Fourth Circuit has explained that there are "two critically different ways" to seek dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1). *Id.* at 1219. A defendant may argue either: that the complaint lacks allegations that would, if taken as true, establish subject-matter jurisdiction (a facial challenge); or that the jurisdictional allegations of the complaint are not, in fact, true (a factual challenge). *See, e.g.*, *Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009).

But both types of challenges are not available to defendants in every case. In particular, a factual challenge under Rule 12(b)(1) is impermissible when the jurisdictional facts are intertwined with facts bearing on the merits of a plaintiff's claims. *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("If satisfaction of an essential element of a claim for relief is at issue . . . the jury is the proper trier of contested facts."); *Adams*, 697 F.2d at 1219–20 (holding that the disputed jurisdictional facts "are so intertwined with the facts upon which the ultimate issues on the merits must be resolved, that 12(b)(1) is an inappropriate basis upon which to ground the dismissal"); *United States v. North Carolina*, 180 F.3d 574, 580–81 (4th Cir. 1999); *S. C. State Ports Auth. v. Silver Anchor, S.A. (Panama)*, 23 F.3d 842, 847 (4th Cir. 1994); *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 970–71 (4th Cir. 1990); *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 239 (4th Cir. 1988) (Powell, J., sitting by designation).

When the disputed facts are intertwined with the merits of a case, courts must consider and resolve a factual challenge under Rule 56, as they would resolve other factual questions going to the merits of a plaintiff's claims. *See North Carolina*, 180 F.3d at 581 ("[W]hile the merits and jurisdictional questions are not identical, they are so closely related that the jurisdictional issue is not suited for resolution in the context of a motion to dismiss for lack of subject matter jurisdiction."). This rule ensures that merits issues are resolved using merits procedures—*i.e.*, using the fact-finding rules and standards that apply at summary judgment. *See Kerns*, 585 F.3d at 193.

Now that the case is again before this Court, Defendants have indicated that they wish to file a Rule 12(b)(1) *factual* challenge to Plaintiff's standing. *See* Defs.' Response (ECF No. 104). In prior proceedings in this case, Defendants repeatedly tried to recast their facial challenge to

the complaint as a Rule 12(b)(1) factual challenge—an effort that both this Court and the Fourth Circuit declined to accept. *See Wikimedia Found.*, 143 F. Supp. 3d at 351 n.8; *Wikimedia Found.*, 857 F.3d at 212–13. While the Fourth Circuit noted that Defendants might make another such attempt on remand, it stated that "the district court in the first instance may consider Wikimedia's argument . . . that the intertwined nature of the jurisdictional and merits questions precludes such a challenge." *Wikimedia Found.*, 857 F.3d at 213.

Under Fourth Circuit case law, Defendants may not raise a Rule 12(b)(1) factual challenge here, because the jurisdictional question and merits questions are intertwined. *See Adams*, 697 F.2d at 1219; *Kerns*, 585 F.3d at 193 (intertwined factual issues must be resolved using the procedures "that would apply were the plaintiff facing a direct attack on the merits"). The ultimate fact that Defendants seek to dispute—the fact that Wikimedia's communications are being seized and searched in the course of Upstream surveillance—is both part of Wikimedia's injury for standing purposes and a central element of its Fourth Amendment claims. In particular, Plaintiff has alleged that the government is unlawfully copying and reviewing at least some of the trillion-plus international communications it engages in each year. *See* Am. Compl. ¶¶ 55–111. The Fourth Circuit concluded that Plaintiff's allegations concerning the surveillance of its communications were plausible and sufficient. *Wikimedia Found.*, 857 F.3d at 209–13 ("Together, these allegations are sufficient to make plausible the conclusion that the NSA is intercepting, copying, and reviewing at least some of Wikimedia's communications."). Defendants have not denied that they are copying and reviewing Plaintiff's communications, but they maintain that Wikimedia is unable to prove that any of its communications have in fact been copied and reviewed. That is a factual dispute entirely intertwined with the merits. Whether

Wikimedia's communications are being seized and searched—that is, copied and reviewed—is a central element of Plaintiff's Fourth Amendment claims (as well as its other claims).[1]

In other words, the very facts that Defendants seek to dispute on jurisdictional grounds are dispositive of merits questions in this case. *See S.C. State Ports Auth.*, 23 F.3d at 847; *North Carolina*, 180 F.3d at 580–81. And, as a result, any contest over those facts must be resolved under Rule 56. The government could not, for example, litigate a dispute over whether agents entered a plaintiff's home and searched it under Rule 12(b)(1), as a purely jurisdictional question. Nor could the government litigate under Rule 12(b)(1) a factual dispute over whether agents had opened and examined a plaintiff's mail or stopped and seized a plaintiff on the street. Instead, these types of disputes are routinely resolved under Rule 56 or at trial. *See, e.g., Carter v. Hutto*, 781 F.2d 1028, 1031 (4th Cir. 1986) (parties disputed at trial whether search occurred); *Md. State Conference of NAACP Branches v. Md. State Police*, 454 F. Supp. 2d 339, 354 n.8 (D. Md. 2006) (parties disputed at summary judgment whether search occurred); *Turner v. Kight*, 192 F. Supp. 2d 391, 404–05 (D. Md. 2002) (parties disputed at summary judgment whether strip search occurred). Indeed, even *Clapper v. Amnesty International USA*—in which the government similarly challenged the plaintiffs' injury as a factual matter—was decided at summary judgment, not as a jurisdictional challenge under Rule 12(b)(1). 568 U.S. at 407. Here, too, the facts the government seeks to dispute go to core elements of Plaintiff's Fourth Amendment and other claims, and thus are intertwined with the merits.

---

[1] For instance, the Ninth Circuit's model jury instructions for an illegal-search claim state that the very first substantive element is: whether the defendant searched the plaintiff's person, residence, or vehicle. *See* 9th Circuit Manual of Model Civil Jury Instructions § 9.12 (2007 ed.), https://perma.cc/7RSW-PQN5.

Defendants' suspicionless searching of Wikimedia's international communications is also directly relevant to Plaintiff's claims that Upstream surveillance impairs its protected expressive activities, violates the separation of powers, and exceeds the authority that Congress granted in Section 702. *See, e.g.*, Am. Compl. ¶¶ 38, 47–51, 55–111, 165–68.

Tellingly, this case is nothing like the cases where the Fourth Circuit has allowed a factual challenge to proceed under Rule 12(b)(1). Those cases typically involve ancillary questions of subject-matter jurisdiction far removed from Article III standing—often involving specific jurisdictional requirements imposed by statute. *See, e.g.*, *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 350 (4th Cir. 2009) (jurisdictional prerequisites of False Claims Act were "wholly distinct" from the substantive elements of the plaintiff's claims); *Kerns*, 585 F.3d at 196 (observing that certain jurisdictional requirements of the Federal Tort Claims Act were "wholly unrelated" to the basis for liability under the FTCA); *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 397 (4th Cir. 2004) (addressing jurisdictional requirements of the Foreign Sovereign Immunities Act under Rule 12(b)(1)). Such cases do not involve challenges to a plaintiff's injury-in-fact, which is almost always intertwined with elements of the underlying claim. *See, e.g.*, *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n*, 2 F. Supp. 3d 758, 767 (D. Md. 2014) (finding defendants' "standing argument . . . so intertwined with the merits of the parties' dispute" that it was inappropriate for resolution under Rule 12(b)(1)). The facts that help establish injury for standing purposes—*i.e.*, that show how a plaintiff has been harmed—regularly overlap with the facts that help establish a defendant's liability and the nature of any remedy. Consider a common tort case involving a car accident: the plaintiff's proof that he was in fact injured and that the defendant caused his injury are the basis for both Article III standing *and* proving liability on the merits. In both inquiries, the conduct at issue is the same. For these reasons, the procedure that Defendants propose here is, in reality, something quite radical. To permit defendants to contest the truth of the merits of a plaintiff's claims on a motion to dismiss would significantly remake the course of civil proceedings. It would, in effect, allow challenges to standing to swallow merits questions properly addressed on

summary judgment or at trial. *See Kerns*, 585 F.3d at 192–93 (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)).

Because the question of whether Defendants are seizing and searching Wikimedia's communications is intertwined with the merits, any factual dispute over its truth must be resolved under Rule 56, not Rule 12(b)(1).

## II.    The Court Should Reject Defendants' Effort to Bifurcate These Proceedings.

The government also asserts that "proceedings should be bifurcated to address the Defendants' challenge to Plaintiffs' standing first." Defs.' Response at 2. The government has yet to explain how precisely it proposes to bifurcate the proceedings, but its stated rationale for doing so makes no sense. It argues that bifurcation would "permit the Court to avoid needlessly reaching constitutional questions," *id.*, but Plaintiff's proposed summary judgment briefing would permit the same thing. If presented with the complete summary judgment briefing Plaintiff proposes, the Court, as in any other action, need rule only on those constitutional questions necessary to resolve the case.[2]

Plaintiff will of course respond to whatever other explanation the government offers in its response brief, but absent a substantial justification for deviating from the norm, courts typically permit plaintiffs to present their cases as a whole, not in the piecemeal fashion Defendants seek here. Bifurcation, in other words, is the exception rather than the rule and "is not to be routinely ordered." *Toler v. Gov't Emps.' Ins.*, 309 F.R.D. 223, 225 (S.D. W. Va. 2015).[3]

---

[2] The government ignores, of course, that a ruling on the reach of Article III of the Constitution is *also* a constitutional ruling. And in many ways, standing rulings may have more far-reaching consequences than rulings on the merits, as they may effectively insulate whole categories of executive action from judicial review, as had been the case with surveillance under Section 702 prior to the disclosures that began in June 2013.

[3] *See also Miller v. Am. Bonding Co.*, 257 U.S. 304, 308 (1921) ("In actions at law the general practice is to try all the issues in a case at one time; and it is only in exceptional instances where

Moreover, in this case, every relevant consideration weighs heavily against bifurcation. The facts relevant to standing and to the merits overlap substantially, and so bifurcating the proceedings with respect to those two issues would cause needless duplication of effort. For example, Plaintiff anticipates seeking limited discovery relating to both standing and the merits, but because those issues are intertwined, the discovery Plaintiff anticipates seeking with respect to the two issues will overlap substantially. In other words, bifurcation would potentially require two rounds of overlapping discovery involving closely related subjects. It would also potentially require two full rounds of briefing relying on largely overlapping evidentiary records, two oral arguments addressing largely overlapping factual and legal questions, and two periods of delay between argument and decision. All told, the government's proposed bifurcation risks doubling the discovery, drafting, and deliberation necessary to resolve this case.

Defendants have not offered any justification for that substantial toll, and no justification is apparent. Notably, bifurcation would not promote judicial economy. The government appears to assume that the Court will accept the government's standing theory and that bifurcation will therefore streamline the litigation. Plaintiff respectfully submits that the Court should not do so, particularly given the Fourth Circuit's rejection of the same theory differently packaged. But even if the Court does so, bifurcation would not actually promote judicial economy. It might save the *parties* some effort, but it would not save the Court any. And given the possibility—and,

---

there are special and persuasive reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subjects of separate trials."); *Lewis v. Triborough Bridge & Tunnel Auth.*, No. 97 CIV. 0607, 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000); *F & G Scrolling Mouse, L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 387 (M.D.N.C. 1999) ("Notwithstanding the broad discretion conferred by Rule 42(b), the bifurcation of issues and the separate trial of them is not the usual course of events. Nothing else appearing, a single trial will be more expedient and efficient.") (citation omitted); *Industrias Metálicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 2 (D.P.R. 1997); *Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30, 35 (D. Del. 1995).

Plaintiff believes, substantial likelihood—that the Fourth Circuit would again reject the government's standing theory, the case would come back to this Court only to go through another round of largely overlapping discovery, briefing, oral argument, and decision.

The only apparent cost of Plaintiff's proposed summary judgment briefing is that it might, making several charitable assumptions, require the government to unnecessarily defend the legality of its sweeping Upstream surveillance program on the merits, rather than through the procedural maneuvers it has relied upon to delay judicial review of this surveillance as long as it already has. That cost is no real prejudice, and it is certainly no reason to risk the substantial delay and duplication of effort that bifurcation would very likely entail, particularly given this Court's duty to adjudicate asserted violations of the Constitution.

## Conclusion

For the reasons above, and for those stated previously, Plaintiff respectfully requests that the Court require that any factual challenge to Plaintiff's standing be resolved under Rule 56, as part of the parties' summary judgment motions, and that it reject Defendants' effort to bifurcate these proceedings.

Dated: August 11, 2017      Respectfully submitted,

_____/s/_____

Patrick Toomey (pro hac vice)
 (*signed by Patrick Toomey with*
 *permission of Debbie A. Jeon*)
Ashley Gorski (pro hac vice)
Jonathan Hafetz (pro hac vice pending)
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
ptoomey@aclu.org

_____/s/_____

Deborah A. Jeon (Bar No. 06905)
David R. Rocah (Bar No. 27315)
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION OF MARYLAND
3600 Clipper Mill Rd., #350
Baltimore, MD 21211
Phone: (410) 889-8555
Fax: (410) 366-7838
jeon@aclu-md.org

Jameel Jaffer (pro hac vice)
Alex Abdo (pro hac vice)

KNIGHT FIRST AMENDMENT INSTITUTE
    AT COLUMBIA UNIVERSITY
535 West 116th Street
314 Low Library
New York, NY 10027
Phone: (212) 854-9600
jameel.jaffer@knightcolumbia.org

Charles S. Sims (pro hac vice)
David A. Munkittrick (pro hac vice)
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Phone: (212) 969-3000
Fax: (212) 969-2900
csims@proskauer.com

*Counsel for Plaintiff*