IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| WIKIMEDIA FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-00662-TSE |
| | ) | |
| NATIONAL SECURITY AGENCY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S BRIEF
REGARDING HOW THIS MATTER SHOULD PROCEED**

**INTRODUCTION**

In anticipation of the September 8, 2017, status conference, the Court has directed the parties to submit briefing addressing the following two questions: (1) whether Defendants' anticipated factual challenge to Plaintiff Wikimedia Foundation's ("Wikimedia") standing should be raised as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), or as a summary judgment motion pursuant to Rule 56; and (2) whether the proceedings should be bifurcated. Order, ECF No. 105, at 2.

As shown below, Defendants' factual challenge to Wikimedia's standing may proceed by motion under Rule 12(b)(1), consistent with Fourth Circuit precedent, and need not await summary judgment proceedings under Rule 56. In addition, bifurcating the proceedings to address the standing issue first, prior to reaching the merits, will most effectively promote the interests of judicial economy by avoiding unnecessary expenditures of time and effort, by the Court and the parties, to address the merits of Wikimedia's many claims. Plaintiff's position to the contrary—that Fourth Circuit precedent bars consideration of Defendants' factual jurisdictional challenge under Rule 12(b)(1), and that bifurcation will lead to duplication of

effort—is based on a misreading of Fourth Circuit law, and Plaintiff's erroneous contention that jurisdictional facts are inextricably intertwined with the entirely separate set of facts that would be required to adjudicate Plaintiff's Fourth Amendment claim.  Plaintiff's position, therefore, should be rejected.

## BACKGROUND

Plaintiff Wikimedia seeks to contest the legality of "Upstream" surveillance, under which the National Security Agency ("NSA") targets certain non-U.S. persons reasonably believed to be located outside the United States in order to acquire foreign-intelligence information. Wikimedia maintains that Upstream collection exceeds the Government's authority under section 702 of the Foreign Intelligence Surveillance Act, violates the First and Fourth Amendments and Article III of the Constitution, and should be permanently enjoined.  First Am. Compl. for Decl. & Inj. Relief, ECF No. 70-1 (the "Complaint," or "Am. Compl."), ¶¶ 165-68 & Prayer for Relief. The threshold jurisdictional question to be resolved is whether Wikimedia, in fact, has Article III standing to assert these claims.

Although the technical operational details of Upstream surveillance remain classified, Plaintiff alleges that it involves an initial stage at which the NSA, using surveillance devices connected to the Internet "backbone," intercepts and copies a substantial number of the international online communications transiting U.S. telecommunications networks—including Plaintiff's own—and scans them in-transit to identify communications containing "selectors" associated with the NSA's surveillance targets.  Am. Compl. ¶¶ 46, 47, 49, 50.  Plaintiff alleges that targeted communications, once identified, are ingested into Government databases and retained for analysis and dissemination of any foreign-intelligence information they contain.  *Id.* ¶ 49.  Plaintiff maintains that the initial stage of Upstream surveillance invades its interest in the privacy of its online communications, and its right to control the information they contain, *id.*

¶ 103, regardless of whether they are among the communications retained, read, and/or disseminated by the NSA.

In support of the assertion that the NSA intercepts, copies, and scans at least some of Wikimedia's communications, Plaintiff makes several related allegations.  First it asserts that it engages in more than a trillion online communications each year.  *Id.* ¶ 58.  It then alleges that the "sheer volume" and global distribution of these communications, together with the assumption that the NSA "must be" copying and reviewing all communications that travel across each point on the Internet backbone that it monitors (in order to "reliably obtain" all communications to, from, or about its targets), make it "virtually certain" that the NSA intercepts at least some of Wikimedia's alleged communications.  *Id.* ¶¶ 59-65.

Following the telephonic status conference held on May 14, 2015, *see* ECF No. 60, the Court, in agreement with the proposal of the Government, *see* ECF No. 55, set a schedule for briefing and argument of Defendants' then-forthcoming motion to dismiss for lack of jurisdiction, with "briefing and argument … on any Rule 56 motions, if necessary, [to] be set at a later date," Order, ECF No. 61, at 1-2.  In support of their motion, Defendants argued that the Complaint's allegations, on their face, were insufficient to establish the standing of Wikimedia's then-co-plaintiffs, ECF No. 77-1 at 16-20; and, relying on two expert declarations submitted with their motion, Defendants contested the accuracy, as a factual matter, of certain allegations on which Wikimedia based its standing.  Specifically, the Government took issue with the putative technical necessity, as maintained by Wikimedia, that the NSA must intercept, copy, and review all communications traversing any point on the Internet it monitors in order to achieve its surveillance objectives.  *See id.* at 29-32; ECF No. 89 at 6.

The Court granted Defendants' motion to dismiss on October 23, 2015.  *Wikimedia Found. v. NSA*, 143 F. Supp. 3d 344 (D. Md. 2015).  The Court agreed with the Government that

the allegation of dragnet surveillance on which Wikimedia's co-plaintiffs predicated the alleged interception of their communications was too speculative, on its face, to meet the requirements of Article III. *Id.* at 355-57. The Court also concluded that the separate allegations on which Wikimedia relied, concerning the volume and global distribution of its communications, and the manner in which the NSA, as a technical matter, "must be" conducting Upstream surveillance, were too speculative, on their face, to establish Wikimedia's standing. *Id.* at 360-62. For that reason, the Court did not consider the Government's declarations showing that key allegations on which Wikimedia relied were erroneous as a matter of fact. *Id.* at 351 n.8.

On appeal, the Fourth Circuit agreed that the claim by Wikimedia's co-plaintiffs of dragnet surveillance lacked sufficient, well-pleaded factual support in the Complaint to establish their standing. *Wikimedia Found. v. NSA*, 857 F.3d 193, 198, 213-16 (4th Cir. 2017). The Court of Appeals reached a different conclusion, however, with respect to Wikimedia. The Court determined that Wikimedia's allegations regarding the volume and geographic scope of its communications, together with the allegations concerning the technical manner in which the NSA must be conducting Upstream surveillance, made it plausible that the NSA is intercepting, copying, and reviewing at least some of Wikimedia's online communications. *Id.* at 209-11. In reaching this conclusion the Court of Appeals, following this Court's example, declined to consider the Government's evidence undermining Wikimedia's technical suppositions regarding how Upstream must operate, and treated the Government's motion to dismiss as a facial challenge, rather than a factual challenge, to subject-matter jurisdiction. *Id.* at 212-13. The Court of Appeals emphasized, however, that the Government "is free to bring a facial challenge on remand, where [this Court] … may consider Wikimedia's argument … that the intertwined nature of the jurisdictional and merits questions precludes such a challenge." *Id.* at 213.

4

**DISCUSSION**

I.  **DEFENDANTS' FACTUAL CHALLENGE TO WIKIMEDIA'S ARTICLE III STANDING MAY PROCEED UNDER RULE 12(B)(1).**

The procedures governing challenges to subject-matter jurisdiction in the Fourth Circuit were settled in *Kerns v. United States*, 585 F.3d 187, 192-96 (4th Cir. 2009), and were recently summarized by the Court of Appeals in *24th Senatorial District Republican Committee v. Alcorn*, 820 F.3d 624 (4th Cir. 2016):

> "[A] defendant may challenge subject matter jurisdiction in one of two ways." *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009) …. "First, the defendant may contend that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* …. Alternatively, the defendant may contend "that the jurisdictional allegations of the complaint were not true." *Adams* [*v. Bain*]*,* 697 F.2d [1213, 1219 (4th Cir. 1982)].  In the second scenario, "[a] trial court may then go beyond the allegations of the complaint" and hold an evidentiary hearing to "determine if there are facts to support the jurisdictional allegations." *Id.*  There is no presumption of truth and the court weighs the evidence presented in a 12(b)(1) hearing to determine jurisdiction. *Id.*  "If, however, the jurisdictional facts are intertwined with the facts central to the merits of the complaint, 'a presumption of truthfulness should attach to the plaintiff's allegations.'" *Rich v. United States,* 811 F.3d 140, 145 (4th Cir. 2015) (citing *Kerns,* 585 F.3d at 193). *And "the court should resolve the relevant factual disputes only after appropriate discovery." Id.* (citation omitted).

*Id.* at 629 (emphasis added).  *See also Kerns*, 585 F.3d at 193 ("[W]here the jurisdictional facts are intertwined with the facts central to the merits of the dispute … [the] court should then afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits.").

Plaintiff misstates the law, therefore, when it asserts that "Fourth Circuit precedent bars Defendants from bringing a factual challenge when the jurisdictional facts are intertwined with the merits …." Pl.'s Brief Addressing How This Matter Should Proceed [etc.], ECF No. 107 ("Pl.'s Br.") at 1; *see also id.* at 3 (same).  Both *Kerns* and subsequent Fourth Circuit decisions explain without ambiguity that even when jurisdictional facts are inextricably intertwined with the facts central to the merits of a plaintiff's claim, the jurisdictional issue may be resolved via

5

motion under Rule 12(b)(1) so long as the plaintiff is accorded appropriate procedural safeguards, including the opportunity, if desired, to take discovery. *See 24th Senatorial Dist. Republican Comm.*, 820 F.3d at 629; *Blitz v. Napolitano*, 700 F.3d 733, 739 (4th Cir. 2012) ("*Kerns* simply recognized that when 'jurisdictional facts are inextricably intertwined with those [facts] central to the merits, the [district] court should resolve the relevant factual disputes only after appropriate discovery.'") (citation omitted).  Therefore, consistent with Fourth Circuit precedent it is permissible to address the Government's factual challenge to Wikimedia's standing under Rule 12(b)(1), for at least two reasons.

First, contrary to Plaintiff's argument, *see* Pl.'s Br. at 5-8, the jurisdictional facts in this case and the facts central to the merits of Wikimedia's Fourth Amendment claim are not intertwined.  As explained in *Kerns*, jurisdictional facts are intertwined with the merits when resolution of the jurisdictional issue "is determinative of both jurisdiction and the underlying merits" of the plaintiff's claim.  585 F.3d at 195, 196; *see Estate of Callahan ex rel. Foster v. United States*, 2013 WL 3929850, at *5 (D.S.C. July 29, 2013).

As both this Court and the Fourth Circuit recognized, Wikimedia's standing to maintain this suit turns on whether any of its so-called "communications" (the data transmissions that occur when individual Internet users view or download information available on its public websites) are intercepted, copied, and scanned for targeted selectors by the NSA as they traverse the Internet backbone.  *See Wikimedia*, 857 F.3d at 209; *Wikimedia*, 143 F. Supp. 3d at 350, 359.  As framed in the Complaint, whether the NSA is intercepting any of Wikimedia's communications turns on (i) the volume and global distribution of its communications, and (ii) whether as a technical matter, the NSA must intercept, copy, and review all communications passing through any point on the Internet backbone where it conducts Upstream collection.  *See Wikimedia*, 857 F.3d at 210-11; *Wikimedia*, 143 S. Supp. 3d at 261; Am. Compl. ¶¶ 56-57.

6

In contrast, the merits of Plaintiff's Fourth Amendment claim would turn on an entirely different set of facts. Plaintiff alleges that Upstream surveillance involves the use of devices connected to the Internet backbone to conduct real-time interception and copying of electronic communications as they travel (at the speed of light) through fiber-optic cables, followed by scanning for targeted selectors, whereupon only those copied communications in which targeted selectors are detected are ingested into NSA databases, and the remainder are discarded. Am. Compl. ¶¶ 1, 37, 45-47, 49. The Supreme Court has explained that a Fourth Amendment seizure occurs "when there is some meaningful interference with an individual's possessory interests in … property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). As the Courts of Appeals have recognized, "[b]y requiring some meaningful interference with an individual's possessory interests in property, the Supreme Court inevitably contemplated excluding inconsequential interference with an individual's possessory interests." *United States v. Va Lerie*, 424 F.3d 694, 706 (8th Cir. 2005) (*en banc*).[1] Accordingly, whether the alleged copying of Wikimedia's communications constitutes a Fourth Amendment seizure depends on facts that would reveal whether interception and copying of electronic communications, as alleged above, amounts to meaningful, or inconsequential, interference with any possessory interest Wikimedia has in those communications.[2]

---

[1] *See also Arizona v. Hicks*, 480 U.S. 321, 324 (1987) (picking up stereo equipment to read serial number not a seizure); *United States v. Place*, 462 U.S 696, 718 n.5 (1983) (Brennan, J., concurring); *United States v. Hoang*, 486 F.3d 1156, 1162 & nn. 2, 3 (9th Cir. 2007) (ten-minute detention of package without delaying scheduled delivery not a seizure); *United States v. Schofield*, 80 F. App'x 798, 802-03 (3d Cir. 2003) (officer did not seize box by lifting it during search of car trunk); *United States v. Elmore*, 304 F.3d 557, 560-61 (6th Cir. 2002); *United States v. LaFrance*, 879 F.2d 1, 7 (1st Cir. 1989).

[2] The circumstances that courts consider in assessing whether meaningful interference with a possessory interest has occurred include whether property was taken from anyone's immediate possession; how long the property was detained; whether property was destroyed; whether delivery of a communication was delayed; and whether anyone's freedom of movement was impeded. *See Jacobsen*, 466 U.S. at 124-25; *United States v. Clutter*, 674 F.3d 980, 984-85 (8th Cir. 2012); *United States v. Jefferson*, 566 F.3d 928, 934-35 (9th Cir. 2009); *Hoang*, 486

Similarly, a Fourth Amendment search occurs when the government obtains information by physically intruding on a constitutionally protected area, or by violating a person's reasonable expectation of privacy. *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013).  Where the official conduct complained of "does not 'compromise any legitimate interest in privacy' [it] is not a search subject to the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (quoting *Jacobsen*, 466 U.S. at 123).[3]  Thus, whether the alleged electronic scanning of Wikimedia's communications for targeted selectors constitutes a Fourth Amendment search will turn on facts showing whether the Government actually obtains any information about those copied communications in which Wikimedia has a legitimate expectation of privacy.

Moreover, even if it were shown that the alleged interception, copying, and scanning of Wikimedia's communications constitute Fourth Amendment seizures and searches, the Fourth Amendment bars only "unreasonable" searches and seizures, and the Court would have to determine further whether Upstream collection is reasonable under the "special needs" doctrine that the Supreme Court applies to assess suspicionless searches that serve special government needs other than law enforcement.  That standard would require consideration of facts allowing the Court to balance Upstream's promotion of the Government's compelling national-security interests, *see Haig v. Agee*, 453 U.S. 280, 307 (1981), against the degree to which the alleged copying and scanning of  transmissions to and from Wikimedia's public websites interferes with

---

F.3d at 1160; *Va Lerie*, 424 F.3d at 703-07; *United States v. Gant*, 112 F.3d 239, 242 (6th Cir. 1997); *United States v. Brown*, 884 F.2d 1309, 1311 (9th Cir. 1989); *United States v. Beale*, 736 F.2d 1289, 1289-90, 1292 (9th Cir. 1984).

[3]  *See also Place*, 462 U.S. at 707 (canine sniff of luggage for narcotics not a search, because it does not otherwise expose the contents of the luggage to government agents); *United States v. Karo*, 468 U.S. 705, 712-13 (1984) (placement of an unmonitored tracking device among suspect's belongings did not infringe upon his privacy because until monitored by government agents the device "conveyed no information at all"); *Jacobsen*, 466 U.S. at 122-24 (chemical test of package for cocaine did not compromise a legitimate expectation of privacy where a negative result reveals "nothing of special interest").

Wikimedia's Fourth Amendment-protected interests. *See Maryland v. King*, 133 S. Ct. 1958, 1970 (2013); *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 833 (2002); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652-53 (1995).

It is evident, therefore, that resolution of the standing issue will not be determinative of the merits. *See Kerns*, 585 F.3d at 193. Proving only that Wikimedia's online communications are intercepted, copied, and scanned in transit for selectors would not establish any of the elements that must be proven before Plaintiff can prevail on its claim that these processes entail unreasonable searches and seizures under the Fourth Amendment. Thus, the facts on which jurisdiction will be decided are not intertwined with the facts that are central to the merits of Plaintiff's claim. Plaintiff reaches the opposite conclusion only by presuming that the alleged copy and scanning of its communications during the Upstream process constitute Fourth Amendment seizures and searches. *See* Pl.'s Br. at 5-6. As the foregoing discussion reveals, that is not a matter to be taken for granted but a contested issue that would require the development of additional facts in proceedings on the merits.

In short, the merits of this case turn on whether the interception, copying, and selector-scanning of communications that allegedly occurs during the Upstream process constitute Fourth Amendment seizures and searches, and, if so, whether they are reasonable. The standing issue simply concerns whether Wikimedia's communications are among those the NSA allegedly intercepts, copies, and scans. Those two separate strands of inquiry are not intertwined, and the standing issue may therefore be pursued in proceedings under Rule 12(b)(1).[4]

---

[4] Plaintiff relies exclusively on *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n*, 2 F. Supp. 3d 758, 767 (D. Md. 2014), as authority for a far-reaching proposition that it does not support, namely, that "challenges to a plaintiff's injury-in-fact" are "almost always intertwined with elements of the underlying claim." Pl.'s Br. at 7. The standing issue in *Potomac Conference* concerned which entity was the legal owner of a disputed trademark, *see* 2 F. Supp. 3d. at 763-65, 767, not "injury in fact," a phrase that does not appear in the court's decision.

<u>Second</u>, it does not matter in the final analysis whether jurisdictional facts in this case are intertwined with facts central to the merits or not. Either way, the standing inquiry may proceed under Rule 12(b)(1). That is so because a determination that jurisdictional facts and the merits are intertwined does not preclude resolution of Defendants' factual jurisdictional challenge under Rule 12(b)(1), but merely requires that Plaintiff be given an opportunity to conduct discovery before the issue of jurisdiction is decided. *See supra* at 5-6, citing *24th Senatorial Dist. Republican Comm.*, 820 F.3d at 629; *Blitz*, 700 F.3d at 739; *Kerns*, 585 F.3d at 193.

Plaintiff states in its brief that it anticipates seeking "limited" discovery relating both to standing and to the merits. Pl.'s Br. at 9. The Government has no objection to allowing Plaintiffs to pursue appropriate jurisdictional discovery.[5] For that matter, Defendants anticipate that they will seek discovery to test certain of Plaintiff's allegations regarding the nature, volume, and global distribution of its communications on which its theory of standing is based. Expert discovery may also be required to the extent the parties intend to rely on expert testimony to address technical matters, such as Wikimedia's (erroneous) contention that as a matter of technological necessity the NSA must intercept, copy, and scan for selectors all communications passing through any points on the Internet backbone where it conducts Upstream surveillance. Because the parties are in agreement that a period of appropriate discovery is in order, the jurisdictional issue may thereafter be resolved by motion under Rule 12(b)(1). *24th Senatorial Dist. Republican Comm.*, 820 F.3d at 629.

---

[5] Defendants observe, however, that attempts by Plaintiff to discover operational details of Upstream surveillance may be met in certain instances by objections that the information desired is protected from disclosure by the state secrets privilege, *see El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007), and by section 6 of the National Security Agency Act, 50 U.S.C. § 3605(a), a statutory privilege affording "absolute" protection to information about NSA intelligence programs, *Linden v. NSA*, 94 F.3d 693, 698 (D.C. Cir. 1996).

## II. REGARDLESS OF WHETHER THE COURT PROCEEDS UNDER RULE 12(B)(1) OR RULE 56, JURISDICTION SHOULD BE BIFURCATED FROM THE MERITS.

When the Government moved to dismiss the Complaint for lack of subject-matter jurisdiction, it sought to contest certain of Wikimedia's standing allegations as a factual matter, on the basis of evidence submitted in two expert declarations.  *See Wikimedia*, 857 F.3d at 205.  Instead, both this Court and the Court of Appeals treated the Government's motion to dismiss strictly as a facial challenge, and on that basis declined to consider the evidence rebutting Wikimedia's allegations.  *Id.* at 200, 205: *Wikimedia*, 143 F. Supp. 3d at 351 n.8.   In so doing, however, the Court of Appeals emphasized that the Government would be free to bring a motion dismiss raising a factual challenge on remand, 857 F.3d at 213; and, as shown herein, Plaintiffs' argument that jurisdictional facts are intertwined with the merits presents no bar to doing so.  The Government should therefore be permitted to renew its motion to dismiss contesting Plaintiff's standing allegations as a factual matter, as it originally endeavored to do.

Bifurcating standing and the merits, moreover, is still the course best calculated to promote the goals of judicial economy, as illustrated in two similar cases involving challenges to the Government's intelligence-gathering activities, *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), and *Jewel v. NSA*, 2015 WL 545925 (N.D. Cal. Feb. 10, 2015).  In *Amnesty International* the plaintiffs sought to bring a facial constitutional challenge to the same statute under which the NSA conducts the Upstream surveillance.  In district court the parties filed cross-motions for summary judgment addressing both standing and the merits of the plaintiffs' constitutional claims, as Wikimedia would have the parties do here.  *See Amnesty Int'l, USA. v. Clapper*, 638 F.3d 118, 127 (2d Cir. 2011).  Yet ultimately the Supreme Court ruled, without reaching the merits of the plaintiffs' claims, that the plaintiffs had failed to establish their standing because it was speculative whether the Government would imminently acquire communications to which they were parties.  *Amnesty Int'l.*, 568 U.S. at 410-14.

11

The same outcome was reached by the court in *Jewel v. NSA*, 2015 WL 545925 (N.D. Cal. Feb. 10, 2015), in which the plaintiffs moved—as Plaintiff wishes to do here—for summary judgment on their Fourth Amendment claim challenging Upstream collection. The plaintiffs in *Jewel* offered factual affidavits in an effort to establish their standing, and pointed to the same official disclosures about Upstream collection as Wikimedia does here. *See id.* at *2–4; Am. Compl. ¶ 37. The *Jewel* court nevertheless held that the plaintiffs had "failed to proffer sufficient admissible evidence to support [their] standing," *id.* at *4, and therefore declined to reach the merits of the plaintiffs' Fourth Amendment challenge to Upstream collection. *Jewel*, together with *Amnesty International*, demonstrates that the time and resources of the parties and the Court should not be invested in addressing the merits of a constitutional challenge to the Executive's actions in the field of intelligence gathering, when there are, at a minimum, serious questions regarding Plaintiff's ability to establish its standing.

Plaintiff's arguments to the contrary are unpersuasive. Wikimedia first opines that bifurcation would represent a "stark departure from ordinary practice," Pl.'s Br. at 1, but that point of view cannot be squared with the very existence of Rule 12(b)(1), the purpose of which is to provide a standard mechanism for early determinations of a court's jurisdiction before a case proceeds to the merits. This Court did not consider it out of the ordinary when it agreed with Defendants at the outset of the case that the standing issue should be decided before proceeding to litigation on the merits, *see supra* at 3; Order, ECF No. 61, at 1-2, nor did the Fourth Circuit find it so in *24th Senatorial District Republican Committee*, *see* 820 F.3d at 628-30.

Reaching for additional adjectives, Plaintiff next denounces the idea of bifurcation as a "radical" proposal that "would significantly remake the course of civil proceedings" by "allow[ing] challenges to standing to swallow merits questions properly addressed on summary judgment or at trial." Pl.'s Br. at 7-8. This is hyperbole. Where, as here, the jurisdictional facts

12

are not intertwined with the merits, and where the Government, and, presumably, this Court are prepared to afford Plaintiff the same "procedural safeguards—such as discovery—that would apply were [Wikimedia] facing a direct attack on the merits," bifurcation presents no danger that the merits will be "swallowed" by litigation of Plaintiff's standing. *Kerns*, 585 F.3d at 193.

Finally, Plaintiff predicts that bifurcation will lead to duplication of effort, requiring two rounds of "overlapping" discovery, briefing, and argument "involving closely related subjects." Pl.'s Br. at 9. But that calculus rests expressly on Plaintiff's position that "[t]he facts relevant to standing and to the merits overlap substantially," *id.*, which as discussed above is not the case. The merits of Plaintiff's Fourth Amendment claim encompasses an array of legal and factual issues that need not be addressed to dispose of the standing issue. (That is also true of the First Amendment, Article III, and statutory-authority claims that Wikimedia also would have the parties litigate and the Court consider.) Postponing consideration of the merits until and unless it becomes necessary to address them represents an opportunity to conserve the time and resources of the parties, and the Court, without risk of duplicating the effort needed to resolve this case.[6]

The most that could be said against deciding to bifurcate the proceedings now is that the discovery proceedings envisioned by Plaintiff and the Defendants may flesh out and bring into sharper focus the issues of material fact that are genuinely disputed.[7] Once more is known about

---

[6] That is so notwithstanding Plaintiff's unfounded suggestion that the Fourth Circuit has already "reject[ed] the [G]overnment's standing theory," and would "likely" do so again. Pl.'s Br. at 9-10. While the Court of Appeals concluded, accepting Plaintiff's allegations as true, that Wikimedia has stated a plausible claim of standing, it also observed that what is plausible for purposes of a motion to dismiss may be rendered too speculative at a stage where the assumption of truth is stripped away and the veracity of key allegations is put to the test. *See Wikimedia*, 857 F.3d at 211-12; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement'…."). It is Plaintiff that is trucking in unfounded expectations about the outcome of this case, and not, as Plaintiff suggests, the Government. *See* Pl.'s Br. at 9.

[7] It may be revealed, for example, that the standing issue is at bottom a narrow one, susceptible of relatively straightforward disposition, obviating any need for prolonged discovery,

the factual issues that the parties intend to explore, the Court could arrive at a more informed decision about how the proceedings should most appropriately be staged.

## CONCLUSION

For the reasons set forth above, (1) the Government may raise its anticipated factual challenge to Plaintiff's standing as a motion to dismiss under Rule 12(b)(1), and (2) the Court should bifurcate the proceedings on jurisdiction and the merits.

Dated:  August 25, 2017

    Respectfully submitted,

    CHAD A. READLER
    Acting Assistant Attorney General
    ANTHONY J. COPPOLINO
    Deputy Branch Director

    *James J. Gilligan*
    JAMES J. GILLIGAN
    Special Litigation Counsel

    RODNEY PATTON
    Senior Counsel
    JULIA A. BERMAN
    CAROLINE J. ANDERSON
    TIMOTHY A. JOHNSON
    Trial Attorneys

    United States Department of Justice
    Civil Division, Federal Programs Branch
    20 Massachusetts Ave., N.W., Rm 6102
    Washington, D.C.  20001
    Phone: (202) 514-3358
    Fax: (202) 616-8470
    E-mail:  james.gilligan@usdoj.gov

    Counsel for Defendants

---

or other litigation, concerning the merits.  It may also come to light that information critical to proof of Plaintiff's case, or the Government's defense, is protected from disclosure by the state secrets privilege, or section 6 of the National Security Agency Act, *see supra* at 10 n.5, necessitating dismissal of the case on the alternative ground that pivotal issues—whether of jurisdiction, or the merits—cannot be adjudicated without disclosures of classified information that would place national security at risk.  *See, e.g,, El-Masri*, 479 F.3d at 310; *see also Amnesty Int'l*, 568 U.S. at 412 n.4.