1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
2                       ALEXANDRIA DIVISION


3
     -------------------------------x
4                                    :
     WIKIMEDIA FOUNDATION            :
5                                    :
                    Plaintiff    :
6            versus               : Civil Action Number
                                 :
7    NATIONAL SECURITY AGENCY, et al: 15-CV-662
                                 :
8                    Defendants. :
     -------------------------------x
9
                                      September 22, 2017
10
             The above-entitled Status Conference was
11   continued before the Honorable T.S. Ellis, III, United States
     District Judge.
12
                     THIS TRANSCRIPT REPRESENTS THE PRODUCT
13                   OF AN OFFICIAL REPORTER, ENGAGED BY THE
                     COURT, WHO HAS PERSONALLY CERTIFIED THAT
14                   IT REPRESENTS TESTIMONY AND PROCEEDINGS OF
                     THE CASE AS RECORDED.
15

16

17

18

19

20

21

22

23

24

25

2

1                          <u>A P P E A R A N C E S</u>

2    FOR THE PLAINTIFF:

3            **Alex Abdo**
             Knight First Amendment Institute
4            At Columbia University
             535 West 116th Street
5            314 Low Library
             New York, NY 10027

6
             **Patrick Toomey**
7            American Civil Liberties Union
             Foundation
8            125 Broad Street, 18th Floor
             New York, NY 10004

9

10   FOR THE DEFENDANTS:

11           **Rodney Patton**
             **Caroline J. Anderson**
12           **Timothy A. Johnson**
             United States Department of Justice
13           Civil Division, Federal Programs Branch
             20 Massachusetts Ave., N.W., Room 7320
14           Washington, D.C. 20001

15

16

17

18

19

20
     OFFICIAL UNITED STATES COURT REPORTER:
21
             MS. TONIA M. HARRIS, RPR
22           United States District Court
             Eastern District of Virginia
23           401 Courthouse Square
             Tenth Floor
24           Alexandria, VA 22314
             763-443-9034
25

3

1                          **P R O C E E D I N G S**

2

3          THE DEPUTY CLERK:  Wikimedia Foundation.net versus

4     NSA.  Civil Case Number 1:15-CV-662.

5          Counsel, please note your appearance for the record.

6          THE COURT:  Who is here for the plaintiff?

7          MR. ABDO:  Good morning or good afternoon, Your

8     Honor.  Alex Abdo for the Knight First Amendment Institute on

9     behalf of the plaintiff.

10         THE COURT:  Would you spell your name for the

11    reporter, please?

12         MR. ABDO:  Yes, Your Honor.  Alex spelled, A-L-E-X.

13    Abdo spelled, A-B-D-O.

14         THE COURT:  All right.  And you'll argue on behalf

15    of the plaintiff?

16         MR. ABDO:  I will, Your Honor.  And I'm joined by my

17    colleague, Patrick Toomey from the ACLU.

18         THE COURT:  All right.  And who is here on behalf of

19    the defendant?

20         MR. GILLIGAN:  James Gilligan, Your Honor, with the

21    Department of Justice.  Gilligan is spelled just like the

22    island.  With me here at counsel table are Rodney Patton,

23    Caroline Anderson, and Timothy Johnson also with the

24    Department of Justice.

25         THE COURT:  "Just like the island."  I never saw the

4

1  program.  I actually am older than the program, but I escaped

2  it, for which I think I should be eternally grateful.

3          MR. GILLIGAN:  Yes, Your Honor, because I have never

4  escaped it and you should be very grateful.

5          THE COURT:  All right.  This matter is before the

6  Court on remand from the Fourth Circuit, which concluded that

7  the complaint correctly failed to state jurisdictional facts

8  against some defendants but stated enough in the complaint for

9  Wikimedia.  I think that's essentially -- and then it went on

10 to say that if the defendant wished to dispute those facts

11 then it could do so.  And the Court could proceed in a variety

12 of ways.  One of which is, I think, the most common is to

13 allow some discovery and have an evidentiary hearing and rule.

14 The other is simply to conclude that in three or four months

15 we'll have summary judgment.  And that's really what we're

16 here today for me to decide:  To aid me in reaching an

17 appropriate decision.

18          I have your briefs, which were helpful.  But, I need

19 to focus sharply on what it is that is in dispute about

20 injury-in-fact for Wikimedia, because that's what Wikimedia

21 contends and wants to show, and why NSA thinks it doesn't

22 exist.

23          I don't have much doubt, by the way, that there

24 are -- there is some interrelation between facts and

25 jurisdiction, but that doesn't dispose of how I should

1   proceed.

2          Let me ask, to begin with -- let me confirm with Mr.

3   Abdo, your contention, as I understand it, is that NSA copies,

4   using surveillance devices along the internet backbone, it

5   intercepts and copies text-base communications of Wikimedia.

6   Am I correct?

7          MR. ABDO:  That's correct, Your Honor.

8          THE COURT:  But you go on and say in addition, they

9   attempt to filter that data, foreign and domestic, and -- but

10  some domestic is copied and within that domestic is Wikimedia

11  material?

12         MR. ABDO:  That -- slight modification.  There are

13  two types of filtering that go on that we understand.  The

14  NSA, as we understand, attempts to filter out purely domestic

15  communications from the set of communications that it scans.

16  And by the Government's own descriptions, in publically

17  available documents that have been officially acknowledged,

18  that filtering is incomplete.  And those that -- those that

19  pass that first filter include communications that are purely

20  foreign as well as ones that have --

21         THE COURT:  I thought that's what I said.  And that

22  some of those --

23         MR. ABDO:  Right.

24         THE COURT:  That don't get filtered out that are

25  domestic are Wikimedia.

6

1          MR. ABDO:  That's right.  I was just qualifying

2   domestic -- there are purely domestic ones that the NSA

3   intends to filter out entirely because its authority does not

4   allow it to collect those.  But its authority does allow to

5   collect one end domestic and one end foreign communications.

6          THE COURT:  All right.  Now, then I think you also

7   allege that they review those domestic communications of

8   Wikimedia?

9          MR. ABDO:  That's right.

10         THE COURT:  What do you mean by -- you -- they

11   actually read them?

12         MR. ABDO:  Well, they have surveillance equipment

13   that scans the full text of text-based international

14   communications to determine whether anywhere in the content of

15   those communications.  So, for example, including inside the

16   envelope.  Whether they mention specific selectors, is the

17   term that the NSA uses, that the NSA is targeting.  And if so,

18   if the body of the message mentions one of those selectors,

19   then that communication is shunted off for retention and --

20         THE COURT:  But does anybody -- nobody reads it.

21   It's just a computer search by a selector?

22         MR. ABDO:  At -- at that point, that's correct.

23         THE COURT:  And if the message is not selected,

24   there's no selector in there, then that particular message,

25   although it was copied, and it wasn't filtered as it should

7

1    have been, it made it, but it's not got a selector.  Nobody

2    reads that.  Nobody looks at it.  It's -- that's not the

3    injury-in-fact that you're claiming.

4              MR. ABDO:  Well, we do claim that a computerized

5    scan of the message is an injury-in-fact and that it is a

6    search for a seizure within the meaning of the Fourth

7    Amendment.  In the same way that if the Government used robots

8    to search the interiors of homes for contraband, that would be

9    a search of whether or not contraband was detected.  And I

10   understand that we have a disagreement with the Government on

11   the merits about that position.  And I think that's an

12   important question -- that's an important question that goes

13   to the vitality of the Fourth Amendment in the digital age.

14   But that's a dispute on the merits.

15             THE COURT:  All right.  Yes, I think, you're right.

16   It is a dispute on the merits.

17             All right.  Thank you.  Let me -- now Mr. Gilligan,

18   I think we have clearly the allegation or the contention by

19   the Government that the NSA copies text-based communications

20   of Wikimedia that passed through this backbone.  And they

21   use -- they filter out or try to filter out purely foreign and

22   that's a little -- that's not entirely successful.  Some

23   domestic matters are copied.  And some of those, they contend,

24   are Wikimedia.

25             Is that your understanding too?

8

1          MR. GILLIGAN:  That is -- yes, that is my

2   understanding of the allegations.  Yes, Your Honor.

3          THE COURT:  Now, is it the NSA's contention

4   factually that there aren't any domestic Wikimedia messages

5   that are copied?

6          MR. GILLIGAN:  I think, Your Honor, if the question

7   is put as a matter of fact, it's a question that we can --

8   cannot respond to.  We could not confirm or deny that because

9   that would get into classified operational details --

10          THE COURT:  All right.

11          MR. GILLIGAN:  -- of the NSA's upstream collection

12   --

13          THE COURT:  But what about -- the reason I ask

14   that -- I take your point that it's classified, but we

15   could -- and we'll have CIPA hearings if we need to.  But if

16   the Government were to say we don't copy, we intercept, but

17   don't copy any Wikimedia.  Because as a matter of fact, even

18   though our filtering of domestic from foreign is imperfect,

19   what's left in the domestic is not Wikimedia.  That could be a

20   fact, couldn't it?

21          MR. GILLIGAN:  Yes, that -- that could be a fact.

22   Yes.

23          THE COURT:  And if that were a fact, the case could

24   be over?

25          MR. GILLIGAN:  If that were a fact that could be

9

1   disclosed on the public record, Your Honor, yes, the

2   case would be over.

3           THE COURT:  Well, even if it couldn't be disclosed

4   on the public record, if it were through a CIPA hearing and I

5   ruled that, it's over.

6           MR. GILLIGAN:  Two points on that, Your Honor.  The

7   first is that CIPA applies only in criminal matters.

8           THE COURT:  Oh, you're correct.

9           THE DEFENDER:  It does not apply in civil --

10          THE COURT:  I've written that it should be applied

11  civilly.

12          MR. GILLIGAN:  A debate for another forum, Your

13  Honor.

14          THE COURT:  Yes.

15          MR. GILLIGAN:  And second of all, if the Court were

16  to announce on the public record that -- that the NSA does not

17  intercept any of Wikimedia's communications or scan them, that

18  in itself would tend to reveal classified information.

19          THE COURT:  Well, how do we proceed in this case

20  factually?

21          MR. GILLIGAN:  Well, there are -- it seems to us,

22  Your Honor, the plaintiff, of course, has the burden of

23  establishing that it has standing to bring the claims that it

24  has, purported to state in its Amended Complaint.  And that's

25  predicated at the stage of proceeding on the allegation that

1   its communications are so numerous and so widely, globally

2   distributed that the NSA must be somewhere on the internet

3   backbone intercepting, copying, and scanning for selectors.

4   It's communications, which I underscore, are what they call

5   communications, are the transmissions of data between its

6   public websites and individual internet users.

7               It -- it seems to us it's -- it's their burden to

8   establish those --

9               THE COURT:  How can they meet that burden without

10  discovery that gets into what you call "classified

11  information"?

12              MR. GILLIGAN:  Well, Your Honor, I can reserve

13  judgment on that until I see what discovery requests they

14  pose.  But, yes, it may well be that -- that -- that --

15              THE COURT:  Well, I can guarantee you one of the

16  discovery questions is going to be, do you capture and copy

17  messages that include Wikimedia messages?

18              And you would answer that under oath yes or no.

19              MR. GILLIGAN:  Or we would potentially assert --

20  it's not my decision, of course -- but that kind of a question

21  would raise a possibility that we -- the Government would

22  assert The States Secrets Privilege or The NSA's Statutory

23  Privilege against disclosure, compelled disclosure.

24              THE COURT:  Well, then how could this case ever be

25  resolved?

1          MR. GILLIGAN:  Well, Your Honor, if -- if -- this is

2    a point, Your Honor that I had intended to make here on my

3    own.  Which is that one of the reasons that this case should

4    be bifurcated between the jurisdictional standing question and

5    the merits, is that the plaintiff's efforts to carry its

6    burden on establishing its standing, may run into the State's

7    Secret Privilege and The NSA Statutory Privilege.  And that

8    would bring the matter, it seems to the Government, to a close

9    right there, which is why it doesn't make sense to start

10   jumping into a bunch of merits proceedings until we see

11   whether the plaintiff can possibly carry its burden of

12   establishing its standing.

13          THE COURT:  Well, then what in the world do you see

14   is a difference between merits and jurisdiction if they have

15   to show injury-in-fact to establish a Fourth Amendment

16   violation.  They have to show it for merits and they have to

17   show it for jurisdiction.  Am I correct?

18          MR. GILLIGAN:  Well, yes, Your Honor.  Any litigant

19   in the Federal Court carries the burden or must carry the

20   burden of establishing that it has standing.

21          THE COURT:  And it also has the burden of

22   establishing the violation.

23          MR. GILLIGAN:  Correct.

24          THE COURT:  And how can it do that without answering

25   the question that you say is going to provoke a State Secret

1  invocation -- or privilege invocation because the question,

2  very simply is, do you capture and filter or do you fail to

3  filter out Wikimedia messages that are domestic?  And you say

4  we can't answer that because it's a state secret.

5          How can they possibly -- how could Wikimedia

6  possibly know the answer to that?  They can't know.

7          MR. GILLIGAN:  Indeed, Your Honor and that is --

8  that is the consequence of The State Secrets Privilege as it

9  was in El-Masri.

10          THE COURT:  Well, yes, but I don't see any point

11  then in going on.  Assert it and see if I accept it.  You've

12  got to go through all the procedures.  You've got to get the

13  Attorney General and everyone else to sign on.  Am I correct?

14          MR. GILLIGAN:  Yes, Your Honor, there are plenty of

15  procedures and many hoops we would have to jump through to

16  make that happen.

17          THE COURT:  Well, I don't see why we don't go to

18  that.  Because clearly both jurisdiction and merits in this

19  case involve the central question:  "Do you, NSA, copy and

20  filter and maybe content review Wikimedia domestic messages?"

21          The answer is either yes or no.  If it's yes, then

22  the plaintiff says, "you've violated the Fourth Amendment."

23  If the answer is no, the case goes away on both grounds.

24  No -- the merits and jurisdiction.  Although technically, it

25  would just be jurisdiction because there wouldn't be any power

1    to reach the merits.  But I didn't realize that -- I thought

2    you were going to say, "No, we don't copy those messages."

3            But instead what you've said is, "I'm not authorized

4    to tell you whether we copy those messages or not."

5            MR. GILLIGAN:  That's correct, Your Honor.

6            THE COURT:  And I appreciate that.  I've been in

7    enough classified cases over the last 30 years in this

8    courthouse, not this courthouse, but the previous courthouse I

9    sat in.  So that I know that they're not that simple.

10           MR. ABDO:  Your Honor, if I might address directly

11   your question of how we would intend to show that Wikimedia

12   had suffered an injury-in-fact, even assuming the Government

13   offers and the Court accepts The State's Secrets Privilege

14   invocation to that particular question, I'd be happy to -- I

15   think that question might be, you know, one we'd answer, I

16   think, ultimately.

17           THE COURT:  All right.  I'll let you answer that.

18           MR. ABDO:  Carry our burden.  I'll be happy to come

19   and do that.

20           THE COURT:  Mr. Gilligan will listen with interest.

21           MR. GILLIGAN:  I will indeed, Your Honor.

22           MR. ABDO:  All right.  Thank you, Your Honor.  So

23   there is a substantial public record about how upstream

24   surveillance operates.  And that record comes directly from

25   the Government in most circumstances from disclosures the

14

1    Government has affirmatively made to statements that it's made

2    to the privacy and Civil Liberties Oversight Board or in

3    Congress in defending this authority.

4            And we believe that on the basis of that public

5    record, we can demonstrate, as a matter of fact that

6    Wikimedia's communications are being copied and reviewed by

7    the NSA under upstream surveillance.

8            THE COURT:  How do you do that?

9            MR. ABDO:  We do it in part --

10           THE COURT:  I'm not intimately familiar with all

11   aspects of that review.  I think it was -- it came up during

12   the first hearing in this case, as I recall.  I don't think it

13   specifically says anything about Wikimedia.

14           MR. ABDO:  Well, we -- we -- the complaint -- and we

15   would anticipate supporting, obviously, with declarations,

16   including expert declarations, would explain, I think, three

17   key facts that are essential to our injury-in-fact

18   demonstration.

19           And I would -- I should say at the outset that we

20   anticipate also seeking limited discovery.  But we don't think

21   that that discovery -- we don't think our ability to show

22   injury-in-fact hinges on the discovery.  Although, we would

23   seek it nonetheless.

24           The first critical fact we would establish through

25   our own declarations and expert declarations is that

1   Wikimedia -- the volume of Wikimedia's communications and the

2   global distribution of its communications is such that that

3   some Wikimedia communications traverse every one of the major

4   international cables entering the United States.

5         The second key fact that we would show is that, as a

6   matter of how the internet operates and how packets traverse

7   the internet, for the NSA to acquire even a single

8   communication going along one of the paths -- for example, if

9   it wants to collect an e-mail, it needs to collect all e-mails

10  traversing that path and reconstruct them because they're all

11  broken up into packets.  And to even read one of them in the

12  way upstream works, the way that it has been publicly

13  described to work.  It needs to intercept all of them.  That

14  is something that is based on basic internet technology and we

15  would be able to show that through an expert declaration.

16        And the final key fact is that the NSA is, in fact,

17  conducting upstream surveillance at one of these internet

18  backbone trip points, which we think the public record

19  demonstrates by the NSA's own admissions.

20        Now, we may also ask the NSA the particular question

21  Your Honor eluded to, but we don't think an answer to that

22  question is necessary for us to show, to carry our burden of

23  showing, by a preponderance of the evidence that the NSA, is

24  in fact, copying and reviewing the --

25        THE COURT:  All right.  Let me review to see if I

16

1   understand your argument.  You're saying that on the basis of

2   what's in the public record now, Wikimedia can show

3   injury-in-fact because through expert declarations, or a

4   hearing with experts, it can show that -- I think you said

5   that it's publicly known that they use a particular backbone

6   or?

7            MR. ABDO:  Well, I'm not sure how much of that is

8   already in the public versus would be within Wikimedia's own

9   knowledge so that they could provide that information through

10  an expert declaration.  But it would be information either in

11  Wikimedia's own possession or publicly available about the

12  distribution and the volume of its international internet

13  communication traffic.

14           THE COURT:  Well, I thought what you were saying is

15  that you're able to show that on one of these backbones that

16  they do take messages, and by virtue of the way in which the

17  internet disseminates messages, in bits and pieces, it would

18  have to be reconstructed when they arrive separately in

19  various destinations, that they get them all.  And that there

20  would be -- maybe you would show them mathematically, that

21  there's a high probability that Wikimedia messages are

22  included in that backbone.  Is that what you're saying?

23           MR. ABDO:  Yes, Your Honor.

24           THE COURT:  And --

25           MR. GILLIGAN:  It alluded to that --

1          THE COURT:  Well, suppose I -- we proceed there to

2    get to that point -- I'll let you, since you have the burden,

3    as you correctly know, and you get to that point -- and I

4    conclude that you have shown by a preponderance of the

5    evidence adequate injury-in-fact to Wikimedia; where do we go

6    from there?

7          MR. ABDO:  Well, before getting there I think --

8          THE COURT:  No, I'm there.  So if you want to come

9    back, come back.

10         MR. GILLIGAN:  Sure.  Sure.

11         THE COURT:  But when I'm there, you're there.

12         MR. ABDO:  Of course, Your Honor.  Sorry about that.

13         THE COURT:  Where do we go from there?

14         MR. ABDO:  We would proceed to the merits.  But I --

15         THE COURT:  What would be different about the merits

16   that wouldn't trigger The State Secret thing?

17         MR. ABDO:  Well, that is -- so that question,

18   whether we can show by preponderance of the evidence, which is

19   our burden on the merits, that Wikimedia's communications are

20   being copied or reviewed, that's a question that is essential

21   both to jurisdiction and to the merits.  And if we make that

22   showing, we don't think --

23         THE COURT:  Do you have to do anything else?

24         MR. ABDO:  At least to establish the first element

25   of all of our claims.  Now, we would have to then have a legal

18

1   fight over the legal consequences of that showing.  Is that a

2   search or a seizure.  And if so, is it a reasonable one?  Now,

3   setting aside the Fourth Amendment claim on our statutory

4   claims, for instance, that would show that upstream

5   surveillance has been applied to us.  And we believe upstream

6   surveillance is not consistent with the statute.  So we would

7   have to have a legal fight over whether upstream surveillance

8   is consistent with the statute.  And we think all of that

9   is -- all of those questions are merits ones.  And for that

10  reason, we think they cannot be appropriately resolved in a

11  Rule 12(b)(1) proceeding.  Even after a period of discovery,

12  we think they have to be resolved on a 12(b)(6) proceeding or

13  an actual trial so that the Court could resolve any disputed

14  facts.

15          THE COURT:  It seems to me hard for you all to

16  dispute facts since you don't have them.

17          MR. ABDO:  Well, my understanding is the Government

18  intends to dispute our characterization or our factual showing

19  of how the internet works, and the consequences of the

20  distribution of Wikimedia's communications.

21          THE COURT:  Yes, I can see that possibility of

22  dispute.  For example, I'm going to ask Mr. Gilligan in a few

23  minutes here about this point, this point you've just -- point

24  you've made about we would show with experts that the

25  Government copies all this on the backbone and by -- and that

1    Wikimedia messages go on that backbone, and that by virtue of

2    the way the internet disseminates information, in various bits

3    and pieces, it'd have to be reassembled at the destination,

4    that it captures Wikimedia bits and pieces.

5            MR. ABDO:  That's right.

6            THE COURT:  And you think they're going to dispute

7    that?

8            MR. ABDO:  I think they -- they said so in their

9    opposition brief or their brief in this proceeding.  But I

10   would like to point out that we don't think it's appropriate

11   to address that question before we've had an opportunity to

12   seek whatever discovery we like going to, you know, going to

13   that question.  And we think controlling Fourth Circuit law

14   says --

15           THE COURT:  I have a hard time -- I don't quarrel,

16   by the way, I think you're perfectly on sound ground saying

17   you need some discovery.  I'm not sure I see any discovery

18   that isn't going to run into what Mr. Gilligan said:  The

19   State Secret Privilege.

20           MR. ABDO:  Well, as I said before, Your Honor, there

21   is a substantial public record of --

22           THE COURT:  Well, then you don't need discovery if

23   there's a public record.

24           MR. ABDO:  I agree that we don't need it in a

25   technical sense, but we would still seek it because it would

1   bolster our claims and make some -- make it harder for some of

2   the Government's arguments to be accepted.

3          THE COURT:  It would be a waste of my time.  If it's

4   in the public record by the Government, it's in the public

5   record.

6          MR. GILLIGAN:  The --

7          THE COURT:  Now, if what you're saying is in the

8   public record is Professor Numbskull from MIT says "X" and

9   they don't agree with that, then you're going to have to get

10  Numbskull here and testify.  And I'd have to hear him

11  cross-examined by Professor from Hard -- Hardskull from

12  Caltech or Princeton or from wherever.

13         But it's a factual question.  You know, it either is

14  or it isn't.  And it doesn't seem to me, although I confess to

15  an imperfect understanding of the internet operation, it

16  doesn't seem to me that one can plausibly say that there isn't

17  a clear factual answer to whether NSA captures, copies

18  Wikimedia messages.  It either does or it doesn't.

19         Now, there may be -- they may invoke The State

20  Secret.  I want to see whether we can do anything at all of

21  any significance before they do that.  Otherwise, it's a waste

22  of my time, because, as I recall, the invocation of The State

23  Secret -- when is the last time I had to deal with it?  I

24  guess it was also El-Masri.  In the El-Masri case.  I think

25  once the -- once the Government went through that, I don't

21

1    even remember who was president or who was -- who was

2    Department of Justice then.  Who was it, Mr. Gilligan?

3            MR. GILLIGAN:  I believe that was still President

4    Bush, George W. Bush administration.

5            THE COURT:  But I think the Courts are disabled from

6    doing anything once that occurs.

7            MR. ABDO:  Well, I think it would have the

8    consequence of keeping certain evidence out of the

9    proceedings.  But I should point out, Your Honor, that there's

10   a substantial public record, but not every detail about

11   upstream surveillance that would be relevant to these

12   proceedings has been disclosed.  And it may be that some

13   details need to remain secret as a matter of state secrets.

14           THE COURT:  But you think the other is sufficient to

15   make your case?

16           MR. ABDO:  But we don't -- we also -- we think that,

17   and we also think that there's some questions we could ask

18   that wouldn't trigger an appropriately invoked State Secret

19   Privilege.

20           THE COURT:  All right.  Well, that seems to me the

21   way -- the way in which we ought to proceed.  I don't think

22   you can predict with any confidence what will or will not

23   invoke the state secrets because it's a secret what will

24   invoke it.  And they will -- the Government will invoke it

25   when it deems it appropriate to do so.  So it seems to me that

22

1   we ought to proceed with you showing the Court by affidavit

2   and memorandum factually why you think that's all you need to

3   show injury-in-fact.

4           MR. ABDO:  Well, if I -- if I may dispute that, Your

5   Honor.  I don't think we can appropriately be put to that

6   obligation until we've had an opportunity to seek discovery.

7           THE COURT:  Well, what is the discovery?  I'm trying

8   to ask you that.  And I don't think you have framed any

9   question that you would ask the Government other than the one

10  I put that doesn't call for invoking the state secret.  You

11  say everything is in the public record.  So I'm saying show

12  me.

13          MR. ABDO:  Respectfully, Your Honor, I'm not saying

14  everything is in the public record.  I'm saying there's a

15  substantial public record that we think is adequate, but as

16  any plaintiff would want to seek discovery.

17          THE COURT:  What else do you want to know?

18          MR. ABDO:  I think there are probably three -- three

19  buckets of general discovery.  We haven't set all of these

20  out.

21          THE COURT:  What questions would you ask?

22          MR. ABDO:  We'd ask questions relating to the

23  operation of the internet that might be ones phrased as part

24  of the expert discovery we would anticipate seeking.  The

25  Government has an expert that it attempted to put on in the

23

1    prior proceedings, who put forth one version of how he thinks

2    the internet works.  And we'd want to depose that expert, most

3    likely, to get a better understanding of where he's deriving

4    his understanding of how the internet works.

5              THE COURT:  All right.  Number one is you'd want to

6    depose the Government's expert on how the internet works.

7    What else?

8              MR. ABDO:  We'd seek -- we'd seek certain admissions

9    relating to how the internet worked -- internet works.  We'd

10   seek certain information relating to whether certain

11   types of --

12             THE COURT:  What admissions would you seek?

13             MR. ABDO:  Relating to what we think of as

14   indisputable propositions about how they --

15             THE COURT:  What are they?

16             MR. ABDO:  Well, there are specifics, Your Honor.

17   For example, the facts --

18             THE COURT:  I'm asking for specifics.  Am I not

19   clear?

20             MR. ABDO:  You are clear, Your Honor.  But I'm not

21   sure I can reproduce them all right now.  But, for example,

22   the way that packets are divided on the internet when they

23   travel across cables, the fact that communications sent to a

24   destination may take a very different path than communications

25   sent back in the opposite path, the basic routing principles

24

1   that apply at the routers that cause that phenomenon.  The

2   fact that you cannot understand an entire communication

3   intelligibly without intercepting each of its component parts

4   and reassembling it.

5          There's detail there that we think would narrow the

6   scope of dispute if we were able to engage in a period of

7   appropriately limited discovery.  And we think, moreover, that

8   we're legally entitled to that before --

9          THE COURT:  All right.  You've mentioned two things

10  so far.  You want to depose their expert on how the internet

11  works and you want to ask for certain requests to admit

12  relating to how packets traverse the internet in messages.

13         MR. ABDO:  We would -- we would also seek certain

14  clarifying questions from the government about the operation

15  of upstream itself.  As I said, there's a substantial public

16  record of how upstream surveillance works, but the government

17  hasn't answered every question.  And we don't think that the

18  answer to every question is a matter of state secret.  And so

19  we would have questions that we would ask.

20         And the final -- that's bucket two.  And the final

21  bucket would be questions specifically relating to Wikimedia.

22  And based on Your Honor's earlier exchange with Mr. Gilligan,

23  it appears that the government may invoke the state secrets

24  privilege with respect to some of that information.  We will

25  take that fact back internally and discuss whether -- whether

25

1  we want to ask those questions or not so as to avoid having to

2  go through State Secrets proceedings.

3            But I think --

4            THE COURT:  What do you think are State Secret

5  proceedings?

6            MR. ABDO:  Well, the Government would have to take

7  the time and deliberation necessary to --

8            THE COURT:  Right.  And then they file something?

9            MR. ABDO:  They file something.

10           THE COURT:  And it's over.

11           MR. ABDO:  That -- it's not quite right it's over.

12  The consequence would be that certain evidence is off the

13  table.  But --

14           THE COURT:  Yes, that's correct.

15           MR. ABDO:  But -- but --

16           THE COURT:  But it's as far as whether the State

17  Secret is invoked, the Court doesn't have the power to

18  question whether it should have invoked it.

19           MR. ABDO:  I'm not sure that's correct, Your Honor.

20  I think there are -- there's a legal standard that applies --

21  if I may consult for a moment, Your Honor --

22           THE COURT:  Yes, by all means you may because I'm

23  interested in that.

24           MR. ABDO:  Right.  And there's a separate

25  question -- sorry -- that I should have mentioned earlier,

26

1    which is Your Honor mentioned CIPA proceedings earlier.  And

2    it is correct that those apply solely to criminal cases.

3              THE COURT:  That's correct.

4              MR. ABDO:  FISA itself has an analog for how to deal

5    with classified information when you are dealing with claims

6    relating to electronic surveillance under FISA.  And we think

7    that procedure, under 1806, 50 U.S.C. Section 1806, applies in

8    this case and allows the Court to review information ex parte.

9    And in some circumstances where appropriate, allow us to

10   participate, and avoid the State Secrets Privilege.

11             The Government, I think, probably vehemently,

12   disagrees with whether FISA provides that.  A Court in

13   California has held that it does.  And --

14             THE COURT:  As soon as you said, "in California,"

15   you impaired its --

16             MR. ABDO:  Well, I hope, Your Honor, yeah --

17             THE COURT:  That's all right.  I like --

18             MR. ABDO:  Members of the cloth, I think, all act in

19   good faith.

20             So in view of our point, Your Honor, though is, the

21   Fourth Circuit case law is clear that where facts that go to

22   jurisdiction are intertwined with facts that go to the merits,

23   it's not a matter of discretion whether the Court can proceed

24   under 12(b)(1).  It is in err to proceed under 12(b)(1) in

25   that circumstance.  The appropriate course is to allow -- is

27

1    to proceed to the merits.

2          THE COURT:  No.  No.  That's not right.  The proper

3    procedure could include proceeding to an evidentiary hearing

4    on injury-in-fact.  I don't have to go all the way to the

5    merits.

6          MR. ABDO:  Well, it could include --

7          THE COURT:  I'm sorry.  Are you -- are you --

8    respond to what I said.  Is that correct what you say?

9          MR. ABDO:  I don't think it is.  I think that -- I

10   think you could proceed to a proceeding on injury-in-fact.

11   But I think --

12         THE COURT:  That's exactly what I said.

13         MR. ABDO:  But I think that would be, in effect, a

14   bifurcated proceeding on the merits of injury-in-fact.  In

15   which we would first be entitled to discovery.

16         THE COURT:  All right.

17         MR. ABDO:  And then could proceed to --

18         THE COURT:  Well, I'm perfectly happy with you

19   having appropriate discovery if, as you've already done,

20   identified with some specificity the discovery that you would

21   think appropriate.  You've mentioned three buckets.  You've

22   described them a bit.  And I'm amenable to that.  I'm not sure

23   I see -- since you keep telling me that the public record has

24   enough to take you all the way.  I'm not sure that that really

25   carries the day.

1          MR. ABDO:  Well, Your Honor, in many cases the

2     plaintiff will have virtually everything they need to prevail,

3     but they still seek discovery to bolster certain claims.  And

4     we would anticipate that same model.

5          THE COURT:  All right.  Thank you.

6          MR. ABDO:  Thank you, Your Honor.

7          THE COURT:  What's your view?  He's made clear what

8     he thinks he needs by way of discovery.  He's also said that

9     the public record contains information, which will enable the

10    plaintiff to carry its burden of a preponderance to show that

11    there's injury-in-fact.  And he says that he is entitled to

12    and needs discovery.  What's your view?

13         MR. GILLIGAN:  Well, we -- I'll cut right to the

14    chase.  And then, if I may, elaborate after that, Your Honor,

15    because I know you like attorneys who cut to the chase.

16         So we are perfectly, as we said in our brief, filed

17    in anticipation of this matter -- we are perfectly amenable to

18    a period of appropriate discovery both for the plaintiff and

19    for us.  And I'll come back to that.

20         Also, I want to, if I can just --

21         THE COURT:  Well, you would want to depose their

22    expert on how the internet operates?

23         MR. GILLIGAN:  Yes.  And we'd want to get other

24    discovery from them regarding their claim.  We're -- we're not

25    going to be content, I think, just to rely on their affidavits

29

1    about the volume and the global distribution of their

2    communications.  We're going to want to probe that ourselves

3    through discovery.

4              THE COURT:  Because their claim on injury-in-fact

5    was going to rest at some point and in some degree on numbers,

6    probabilities, and the number of messages and that sort of

7    thing.

8              MR. GILLIGAN:  Precisely, Your Honor.  And in -- and

9    in laying all of that out, Mr. Abdo ably answered the question

10   you had posed to me, which I thank him for.  Which is, the

11   question why we haven't come in here talking about asserting

12   the State Secrets Privilege immediately.  It is because we had

13   anticipated more or less what Mr. Abdo had said, that they

14   would seek to make a case that regardless of any classified

15   information, that we would say is subject to the State Secrets

16   Privilege, they can still make their case with -- on standing

17   on the basis of publicly available information and information

18   that they would provide through their own declarations and

19   expert testimony.  We want the opportunity to test that.  And

20   so we are in agreement there for that a period of discovery on

21   the jurisdictional question is in order.

22             THE COURT:  Why would that take -- well, let me ask

23   Mr. Abdo because its his -- he's chiefly the person who wants

24   discovery.

25             Why would you need any longer than, at most, 60

30

1    days?

2           MR. ABDO:  Well, it might be helpful, Your Honor, if

3    we had a period of time to consult with the Government about

4    the exact --

5           THE COURT:  I agree with you.

6           MR. ABDO:  But if I can address, I think, an

7    important question though in deciding the length necessary.

8           THE COURT:  Yes.

9           MR. ABDO:  Is the scope of that discovery.  Our

10   view, as we laid out in our papers, is that it shouldn't be

11   limited to jurisdiction.  It should cover the merits.  And

12   there are a couple of important reasons why that --

13          THE COURT:  All right.  Let me hear first from Mr.

14   Abdo on that.  And then I'll come back to you, Mr. Gilligan.

15          MR. GILLIGAN:  Thank you, Your Honor.

16          MR. ABDO:  So, a couple of reasons why I think

17   that's appropriate, Your Honor.  First is that, the bulk of

18   the discovery that we would anticipate seeking relates to

19   jurisdiction and not to a category that you might think of as

20   merits without overlapping with this intertwine jurisdictional

21   question.  So the totality of discovery is not going to be

22   much more if you don't artificially limit it to jurisdiction.

23          And second, if the Court were to limit it to

24   jurisdiction at this point, it might have to engage in

25   satellite litigation over what the line is between

1    jurisdictional discovery and merits discovery.  And we think

2    that line is very hazy precisely because the jurisdictional

3    fact --

4                THE COURT:  I deal with hazy lines all the time.  I

5    don't have a problem.

6                MR. ABDO:  Well, it's -- it's not a question of

7    whether it's difficult.  It'll just cause more litigation and

8    delay things further.

9                THE COURT:  I don't think you all want to come see

10   me very often.

11               MR. ABDO:  I appreciate that, Your Honor.  We're

12   just -- our goal is to streamline the litigation as much as

13   possible given the delay we've already --

14               THE COURT:  That's why I don't want to engage in any

15   unnecessary litigation and unnecessary discovery.

16               MR. ABDO:  Well, Your Honor --

17               THE COURT:  You know the problem with this case is

18   this:  I take your point that merits and jurisdiction are

19   somewhat interrelated.  But after that, I get this

20   qualitative, the bulk of discovery will be jurisdictional and

21   then there will be less in merits -- is meaningless.  I don't

22   know what you mean by the "bulk" of litigation.  I don't know

23   how many interrogatories, how many depositions, how many

24   requests to admit go in this pile and go in this pile.  It's

25   not a meaningful discussion for someone who wants to manage

32

1  this litigation sensibly, efficiently, and expeditiously.  It

2  doesn't give me any information.

3          MR. ABDO:  Well, part of my point, Your Honor, is

4  that -- that it may be virtually possible to distinguish.  So,

5  for example, a concrete example, if we wanted to depose

6  somebody within the Government about certain of the public

7  disclosures they've made about how upstream surveillance

8  works, the line between a question that relates to how

9  upstream works as relevant to our theory that it must work in

10  a way that captures some Wikimedia communications.  And the

11  question that goes exclusively to some question not dealing

12  with this, that would -- that -- with that overlapping

13  jurisdictional merits question is an illusory one.  And we

14  think it's a waste of the Court's resources and ours to

15  litigate those questions.

16          And -- and further, it's true that -- that with

17  respect to these proceedings alone, if the Court ultimately

18  were to agree with the Government, that Wikimedia does not

19  have standing, that would streamline communications in this

20  Court, but that's not the end of proceedings.  And if we go up

21  to the Fourth Circuit and the Fourth Circuit respectfully

22  disagrees, we'll be back here without having any -- having

23  gone through merits discovery --

24          THE COURT:  That's true in every case I have.

25  People can appeal what I do and if the Fourth Circuit

33

1  disagrees with me, then it's back here.

2          MR. ABDO:  Although it's extremely rare, Your Honor,

3  to bifurcate injury-in-fact litigation from merits litigation

4  precisely because that piecemeal litigation tends to be

5  inefficient.  And the --

6          THE COURT:  I don't know of any empirical study to

7  that effect so.  I have my own experience to go by and it

8  doesn't confirm what you've just said.

9          MR. ABDO:  I -- I suppose I can't --

10          THE COURT:  That's right.  You can't refute that.

11  But anyway, I take your point that -- I think its irrefutable

12  that some merits and some jurisdictional are intertwined.

13  It's the same question.  Does the Government intercept, copy

14  Wiki -- Wiki --

15          MR. ABDO:  Media.

16          THE COURT:  Wikimedia messages or information.

17  That's both for merits and for jurisdiction.  And as you have

18  correctly pointed out, there are other questions on merits

19  that are separate from that, but there are other questions on

20  merits that are also a part of that bigger question.

21          MR. ABDO:  Yes, Your Honor.

22          THE COURT:  Let me -- this has been helpful because

23  obviously, I don't understand the technicalities as well as

24  you gentlemen do.

25          MR. GILLIGAN:  May I be heard briefly, Your Honor?

34

1          THE COURT:  Yes, I told you I would, but give me a

2    moment.

3          MR. GILLIGAN:  Okay.

4          THE COURT:  Yes.  Go ahead, Mr. Gilligan.

5          MR. GILLIGAN:  First of all, a housekeeping matter

6    at this point, Your Honor.  I want to be clear.

7          On this dispute that the parties have discussed in

8    their papers, whether we proceed under 12(b)(1) or a 56(f),

9    the Government, at this point, has come to recognize that

10   as -- well, a disputed form over substance.  Whether we call

11   it a proceeding under rule 12(b)(1) or whether we call it a

12   proceeding under Rule 56, the parties are in agreement that

13   there's an appropriate period of discovery that should take

14   place.  And I take it that perhaps the Court is as well.

15   Before we --

16          THE COURT:  That's why I asked.  Do you think 60

17   days would be enough?

18          MR. GILLIGAN:  I think, Your Honor --

19          THE COURT:  But I'm going to let you all discuss

20   that.

21          MR. GILLIGAN:  Right.  It's -- it's hard to asses

22   that especially not knowing the degree to which precisely the

23   plaintiffs are seeking discovery.  And it's still a matter to

24   which we are giving thought on our end.  But -- but I don't

25   think there's any -- any need to resolve an issue over

35

1    12(b)(1) versus Rule 56.  We'll -- we'll call our motion on

2    jurisdiction or to dismiss because of the State Secrets

3    Privilege, or what have you, or a Rule 56 motion if that's

4    satisfactory to the plaintiffs.  That -- that makes no

5    difference to us.

6              It seems to us the important point is -- is to --

7    for both parties to have an opportunity for a discovery to get

8    it --

9              THE COURT:  Well, I think the main point is this.

10             MR. GILLIGAN:  -- to get it standing issue.

11             THE COURT:  Just a moment.

12             The main point is:  Should discovery, at this stage,

13   be limited to discovery that focuses on injury-in-fact or

14   should it go beyond that?  Well, I don't have any clear

15   picture of what discovery is appropriate beyond that.  Mr.

16   Abdo discussed a pile here and a pile here, but I haven't --

17   and I have some sense of what's in the pile for jurisdiction,

18   because he's gone through that.  I have no idea what's over

19   here.  And it seems to me that there is some merit in both not

20   bifurcating and bifurcating.

21             MR. GILLIGAN:  Well, let me -- let me address the --

22   the bifurcation side of the discussion, Your Honor.  Because

23   there is a substantial amount of discovery.  I take your

24   point, it can't be quantified with precision as we all stand

25   or sit here today.  But I can say that there is substantial

36

1    discovery that -- that will have to take place at the merits

2    phase of the case.  As the --

3             THE COURT:  You mean once jurisdiction

4    is established.

5             MR. GILLIGAN:  Assuming hypothetically that

6    jurisdiction were established.

7             THE COURT:  What would that be?

8             MR. GILLIGAN:  Well, for example, to -- it is

9    insufficient, we maintain, under the Fourth Amendment simply

10   to say, "you intercepted or you copied one of our

11   communications."  That's a seizure.

12            The Supreme Court has said that -- that a seizure

13   requires a significant interference with a possessory

14   interest.  And so we would want discovery from Wikimedia, for

15   example, to have them identify what possessory interest they

16   claim in communications that are based on information that

17   comes from third parties and that is made available on their

18   public websites to everyone in the world.

19            Similarly, with respect to the claim that the

20   electronic scanning is a search.  A search under the Fourth

21   Amendment is an invasion of a Fourth Amendment protected

22   privacy interest.  What privacy can Wikimedia claim in

23   communications that are carrying, again, publicly -- publicly

24   available information from their website.  So we're going to

25   want discovery to see what they have to say about that.

37

1           Their First Amendment claim is predicated on the

2    notion that the copying and scanning that allegedly occurs

3    undermines confidence and the confidentiality of their

4    communications.  And therefore that -- that people are less

5    willing to communicate with them, that they have to take

6    burdensome and costly measures to protect the confidentiality

7    of their communications.  We're entitled to discovery on those

8    issues as well, Your Honor.

9           So, it seems to me we -- we are going down a road

10   and a lot of --

11           THE COURT:  Well, you certainly --

12           MR. GILLIGAN:  Prominent effort by the parties --

13           THE COURT:  You have -- you have certainly helped to

14   put some flesh on the bones of what, I would say, goes into

15   that second pile of non-jurisdictional discovery.  That helps

16   me.  I hadn't thought of those.

17           I'm going to have to take a recess in a few minutes.

18   Let me tell you what I'm thinking as of this time.

19           As I said, I concur with your joint view that there

20   is some interrelationship between merits and jurisdictional --

21   some interrelation.  I also concur with both of you that for

22   me to determine jurisdiction, it is appropriate for there to

23   be discovery on that issue as well as other issues on merits.

24           I also think that your -- well, Mr. Abdo makes the

25   point that -- and it's a sound point.  It doesn't frighten me,

38

1    but it's a sound point.  That litigation over the indistinct

2    boundaries between merits and jurisdictional discovery is

3    wasteful.  I take that point as a good observation, but I

4    don't -- it doesn't deter me from picking the best way to

5    manage this -- this litigation because I think you all are

6    very good lawyers.  You're not going to waste my time.  If you

7    do, you will only do it once.  I promise you.  And so it seems

8    to me that there should be a period of time -- I'm not

9    bifurcating anything -- but there should be a period of time

10   in which you engage in discovery -- I was thinking 60 days --

11   in which you do as much discovery as you want cooperating, and

12   answer as many questions as need to be answered, focussing on

13   injury-in-fact.  And then at the end of that, you can -- Mr.

14   Gilligan would have to tell me whether, you know, we've done

15   this discovery and I now have to concede that there is

16   injury-in-fact.  Or I staunchly contend that there isn't.  I

17   don't know whether this discovery would prompt a state secret,

18   but it might -- invocation.

19        And then it would be clearer to me, once we pass

20   that milestone, if I found there was jurisdiction, it would be

21   clearer to me what the appropriate range and scope of

22   additional discovery would be needed to resolve the many

23   claims of the plaintiff.  And we would do that.  And then have

24   an appropriate hearing.

25        Now, the one thing I've left out is that there might

1    also be -- it might also be useful, because there -- I can

2    anticipate now that there will be disputes between experts.

3    Not because there are real disputes but because experts never

4    agree.

5            I remember a long patent case in which I had experts

6    on transistor circuitry.  And very good experts.  They

7    disagreed.  I was concerned that I, of course, did not

8    understand the matters as well as they.  And I was worried

9    these experts would blow things past me.  So I said I was

10   going to appoint a third expert to testify.  And then there

11   were 23 patents.  We did one patent at a time.  No jury.  And

12   to my amazement, the third expert who was appointed by the two

13   experts as a -- and these were first class people from MIT and

14   Princeton and everywhere else.  I ultimately found the

15   original experts on one side or the other, because there were

16   23 patents, to be on the mark.  And I -- and I did six patents

17   out of the 23 before they settled the whole thing.  And I

18   never found persuasive the third expert.

19           But anyway, I anticipate there could be an issue of

20   fact.  And I would want to hear the parties examination of

21   that expert or experts and their cross examination.  I don't

22   have a -- I'm not a Ph.D. in any science and I don't purport

23   to be a scientist.  And I can tell you now, because I think it

24   might be useful for you to know, I don't use a computer.  I'm

25   not a computer person.  I'm not on -- my wife gave me a

1    T-shirt that says, "I am not on Facebook."  That's a true

2    fact.

3            MR. GILLIGAN:  I would like that T-shirt, Your

4    Honor.

5            THE COURT:  I am stunned by the world we now live

6    in.  It's so different from the world I grew up in.  But let

7    me hasten to add, it's a lot better today than it was 50 years

8    ago.  Everything is better today than it was 50 years ago.  I

9    wouldn't want to go back.

10           But computer use is quite another matter.  I don't

11   know that I would ever use Facebook.  I have a small computer

12   that my wife gave me and it opens up into three sites by

13   punching just a couple of buttons.  Weather is one.  The other

14   one is a news thing, and it tells me what that newspaper has

15   each day.  The newspaper need not be identified.  And the

16   third one is the sports page of one of my universities.  And

17   that's it.  That's all I look at.

18           So, I really don't -- I'm not an expert in the way

19   the internet operates.  But I'm prepared to listen carefully.

20   I have some technical background.  And I have some ability to

21   understand it.  But I think I can anticipate that.

22           So what I'm thinking of, because I have another

23   hearing I have to go to here.  And then I'll meet back with

24   you all at about 2:30.  I'm thinking about this, and you all

25   can address and tell me why you think it's not a good idea.

41

1   But I'm thinking that we go ahead.  I don't call it

2   bifurcation, necessarily, because I think a lot of the

3   discovery you're going to be doing will go to the merits if we

4   get to the merits as well as the jurisdiction.

5          There will be -- and I understand fully, there will

6   be more discovery necessary if we get to the merits.  One

7   thing we haven't even discussed that I don't know the answer

8   to is, we've talked about standing under the Fourth Amendment.

9   Does standing come into play for any of the other causes of

10  actions?  And I don't know the answer to that.  And I think I

11  would want you to address that.  But I have in mind, getting

12  back to what I was going to propose, because we can talk about

13  this endlessly.

14         I would think maybe 60 to 90 days at the most for

15  this first round of discovery.  That would focus, I think,

16  chiefly on injury-in-fact.  And I would hope it could be done

17  sooner than that.  And at the end of that, Mr. Gilligan, you

18  would have to tell me whether there -- you continue to contest

19  jurisdictional facts or not.  Mr. Abdo has made it pretty

20  clear that he thinks the matters in the public record by

21  themselves might be sufficient or are sufficient.

22         Well, I would want something provided to me, Mr.

23  Abdo, in the next weeks or so, telling me what that is,

24  educating me.  What is this material?  How does it show that

25  there is injury-in-fact?  And maybe we can move on from this

42

1    jurisdictional issue, and lessen the pain, and go to the

2    merits.  I don't know when executive -- the executive secrets

3    privilege might be invoked.  That's up to the Government.

4    And -- but we'll find out, because I'm sure some of your

5    questions -- well, I asked one and it almost got invoked

6    today.  I asked the central question:  Do you copy and inspect

7    Wikimedia?  And that's a disputed issue, I suppose, because I

8    can see why state secrets are involved in how NSA does certain

9    things.  I don't think there can be a lot of dispute about

10   that.  We don't want to spread out in the public record

11   exactly what NSA does and how they do it or anything else.

12            NSA is us.  Now, that doesn't mean we shouldn't

13   watch carefully to see what it does and we ought not to hold

14   it to the law.  We should.  But we can't forget, it's not them

15   and us.  They are us.  And they are trying to protect us from

16   another 9/11 and other things.  And -- but that doesn't mean,

17   Mr. Abdo, that we shouldn't look carefully over their

18   shoulders and make sure they don't violate the constitution in

19   doing so.  We should.  But as with always in these sorts of

20   things, those who are -- who have that duty, have to go

21   straight to the line, because that's what it takes.

22            All right.  I remember being appalled by my uncle

23   who was in the 82nd Airborne landing in Normandy.  And I

24   remember how appalled people were when he told them that at

25   one point he and his group were pinned down.  They needed to

43

1   know where the Nazis were.  The Germans had their people.  And

2   they captured an officer and they were trying to make him

3   talk.  And my uncle related that he was, sort of, in command.

4   So he pulled out his .45, he put it at the guys skull, and he

5   gave him until ten to reveal the information.  And told him

6   that if the information was false, he'd come back later and

7   pull the trigger.  And I won't say everything he said.  But it

8   was appalling to people listening, because they thought it was

9   bestial.

10          Over the years I've come to respect his position.

11   Yes, they did get the information.  Yes, it was accurate.

12   And, no, nobody was shot.  That's what he said.  I don't know

13   if that's true.  He might have shot the guy.  I don't know.

14          But anyway, let's convene again at 2:30.  And maybe

15   you can help me, because it should be a joint venture of all

16   of us to try to -- try to manage this litigation in a way that

17   is efficient, expeditious, and fair.  And to that end, I think

18   we've already agreed on a number of things.  There should be

19   some discovery, at least, for jurisdiction.  And we already

20   know that the issues are somewhat intertwined, and that this

21   discovery is going to be a bit broad in this category.  And we

22   already know there's a lot of other discovery that we may not

23   have to reach, but we may have to reach it if there is

24   jurisdiction.

25          Remember, Mr. Abdo, I do want to hear from you about

44

1   whether standing has any relevance to the other claims.

2           MR. ABDO:  Yes, Your Honor.

3           THE COURT:  Because maybe it doesn't.

4           MR. GILLIGAN:  I can answer that now, Your Honor --

5   that question now, Your Honor.  Yes, it does.

6           THE COURT:  Okay.  Well, we'll hear more about that.

7   I'm going to take a recess now and hear the next case.

8           MR. GILLIGAN:  Thank you, Your Honor.

9           THE COURT:  At 2:30 we will reconvene.  And I have a

10  ceremony to attend at 3:00 so we need to get this done.  I'm

11  perfectly open to other suggestions, Mr. Abdo and Mr.

12  Gilligan, but not let us just do discovery for a year and then

13  we'll get back to you.  That won't fly with me.

14          MR. ABDO:  Of course.  Thank you, Your Honor.

15          MR. GILLIGAN:  Thank you, Your Honor.

16          THE COURT:  All right.  I thank counsel for your

17  cooperation.  I'll see you at 2:30 and you -- I'm going to

18  take a brief recess.

19          (Recess.)

20                    **P R O C E E D I N G S**

21                         (Continued)

22          THE COURT:  All right.  Let me ask -- counsel, you

23  all don't need to move for a moment.  Counsel in the Wikimedia

24  case and for NSA, are -- have you all had a constructive

25  opportunity to discuss how you might suggest to me we

45

1   structure the rest of this case?

2           MR. ABDO:  We have, Your Honor, although I think

3   we're both in agreement that we could use a few more days to

4   set down in writing and consider it more carefully how long a

5   period would be necessary.  And then propose to you next week

6   in writing a very concrete schedule.

7           THE COURT:  I think that's a reasonable request.  So

8   we'll do it that way.

9           MR. ABDO:  Thank you, Your Honor.

10          THE COURT:  I will be here Friday if we need to

11  convene, but I'd rather -- I'm likely to smile and agree with

12  any joint recommendation you make.  But I think I've explained

13  to you that I agree with some basic propositions you both have

14  expressed.

15          And what I -- and I know that there's merits

16  discovery and there's jurisdictional discovery.  My sense of

17  it is that the biggest pot is the jurisdictional discovery,

18  but I don't know that for sure.  And I'm not sure you all do,

19  but I think so.  So my sense is that we ought to proceed with

20  that and we ought to proceed with a hearing or anything that's

21  necessary to resolve that issue, and be prepared to go on and

22  do the rest if that's what it takes.

23          And would you put, Mr. Abdo, both of you, address

24  the standing issue as it might relate to the causes of action

25  other than the Fourth Amendment cause of action?

46

1          MR. ABDO:  Yes, Your Honor.

2          THE COURT:  Because I don't know what the issues are

3    there.  And we've focussed only on the Fourth Amendment.

4          MR. ABDO:  If I could just say one final thing, Your

5    Honor.  You had referenced a filing that we might make in the

6    next few weeks setting out our public case for having

7    injury-in-fact --

8          THE COURT:  That would be helpful.

9          MR. ABDO:  Our hope is that we could pull that in at

10   the end of discovery.  We think it might be --

11         THE COURT:  Yes.  Yes, I'll permit that.

12         MR. ABDO:  Thank you, Your Honor.

13         THE COURT:  It just -- there's no need not to do it

14   that way.  Because what I anticipate is after this discovery

15   and that you -- we're going -- you should anticipate it that

16   at the end of that period, the parties are going to file,

17   first the plaintiff, then the defendant, briefs that -- I

18   don't care whether you call it 12(b)(1) or Rule 56.  It

19   doesn't matter.  If it's Rule 56 -- it doesn't matter.

20         And I will determine whether there are issues of

21   fact and -- of course, if there are issues of fact, it would

22   go to the jury on merits, but if there are issues of fact on

23   jurisdiction, you're stuck with me .

24         MR. ABDO:  With respect to, Your Honor, to the

25   extent that those issues of fact are intertwined with the

1    merits, we think that the Fourth Circuit case law clearly says

2    the trier of fact has to resolve any disputes.

3                THE COURT:  All right.  Well, you're probably

4    correct in that regard.

5                MR. GILLIGAN:  If I may address that point, Your

6    Honor.  In a case like this against the United States, you

7    would be the trier of facts on the merits as well.  As well as

8    the jurisdictional issues, sir.

9                THE COURT:  All right.  Well, address that in your

10   briefs at the end of this period, however long you recommend

11   that it should be.

12               MR. ABDO:  Yes, Your Honor.

13               MR. GILLIGAN:  Your Honor --

14               THE COURT:  What I -- I know that there's discovery

15   to be done on the merits after -- if the plaintiff prevails on

16   standing.  I think it's inefficient to do it all.  I think

17   it's more efficient for me to decide whether standing goes or

18   not.  I take your point.  I have to go back and look at the

19   cases.  It seems odd to me that under 12(b)(1) the judge

20   decides -- decides the jurisdictional matters.  And somehow it

21   morphs into an issue for the jury if its Rule 56.  But I'll

22   look at it.  I'll look at it.

23               MR. ABDO:  Thank you, Your Honor.

24               MR. GILLIGAN:  Your Honor, very quickly, because I

25   know your time is short.  There is an evidence preservation

48

1    issue about which the parties are currently conferring.  I

2    would simply say at this point, I hope we're able to work it

3    out, but if not, we may be filing a motion for the Court's

4    consideration on that issue or some time --

5              THE COURT:  On the issue of preservation?

6              MR. GILLIGAN:  On a very particular evidence

7    preservation issue.

8              THE COURT:  All right.

9              MR. GILLIGAN:  But I don't want to bog the Court

10   down with the details of that.

11             THE COURT:  Is there any need for me to know what

12   that might entail?

13             MR. GILLIGAN:  I don't -- I don't believe so at this

14   time.  It concerns certain classified information.

15             THE COURT:  All right.  Well, do this:  Give me your

16   joint feelings about how we should proceed by the close of

17   business next Thursday.  Is that enough time?

18             MR. GILLIGAN:  I believe so, Your Honor.

19             MR. ABDO:  Yes, Your Honor.  Yes.

20             THE COURT:  All right.  By five o'clock on Thursday.

21   And if a hearing -- a further hearing is necessary, otherwise,

22   I'll just enter an order and we'll proceed in that regard.

23   But if a further hearing is necessary, I will promptly advise

24   you and we'll convene and have that hearing.

25             MR. ABDO:  Thank you, Your Honor.

49

1          THE COURT:  And if this other issue arises, Mr.

2  Gilligan, I'll hear it promptly.

3          MR. GILLIGAN:  Very well, Your Honor.

4          MR. ABDO:  Just one quick note, Your Honor.  We're

5  in New York so to the extent that you can give us the time

6  necessary to make sure we can appear here --

7          THE COURT:  Yes, I'll keep that in mind.

8          MR. ABDO:  Thank you, Your Honor.

9          THE COURT:  And that will also mean that to the

10  extent we need, I don't foreclose telephone conferences

11  either.

12          MR. ABDO:  Thank you, Your Honor.

13          MR. GILLIGAN:  Thank you, Your Honor.

14          THE COURT:  All right.  I thank counsel.

15

16          (Proceedings adjourned at 2:55 p.m.)

17

18

19

20

21

22

23

24

25

1                  CERTIFICATE OF REPORTER

2

3          I, Tonia Harris, an Official Court Reporter for

4    the Eastern District of Virginia, do hereby certify that I

5    reported by machine shorthand, in my official capacity, the

6    proceedings had and testimony adduced upon the Status

7    Conference in the case of the **WIKIMEDIA FOUNDATION versus**

8    **NATIONAL SECURITY AGENCY, et al**, Civil Action Number

9    15-CV-662, in said court on the 22nd day of September,

10   2017.

11         I further certify that the foregoing 50 pages

12   constitute the official transcript of said proceedings, as

13   taken from my machine shorthand notes, my computer realtime

14   display, together with the backup tape recording of said

15   proceedings to the best of my ability.

16         In witness whereof, I have hereto subscribed my

17   name, this the December 20, 2017.

18

19

20

21   _____
     Tonia M. Harris, RPR
22   Official Court Reporter

23

24

25

                                                              50