**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

WIKIMEDIA FOUNDATION,

     *Plaintiff,*

     v.

NATIONAL SECURITY AGENCY /
CENTRAL SECURITY SERVICE, *et al.,*

     *Defendants*.

Hon. T. S. Ellis, III

Civil Action No.
15-cv-00662-TSE

**PLAINTIFF'S SUPPLEMENTAL BRIEF
IN RESPONSE TO THE COURT'S JUNE 29, 2018 ORDER**

At the conclusion of the June 29, 2018 hearing on Wikimedia's motion to compel, counsel for the government sought to raise an additional point concerning 50 U.S.C. § 1810 and the Ninth Circuit's holding in *Al-Haramain Islamic Foundation v. Obama*, 705 F.3d 845, 855 (9th Cir. 2012). Given time constraints, however, the Court adjourned the hearing and directed the parties to file supplemental briefs concerning the Ninth Circuit's holding.

In short, the Ninth Circuit's holding in *Al-Haramain* is immaterial here. It simply does not bear upon the application of FISA's in camera review procedure to this case.

The text of FISA's in camera review procedure is clear. Through it, Congress directed district courts to accommodate the government's claims of harm in cases like this one by conducting an in camera review whenever "any motion or request is made by an aggrieved person . . . to discover . . . materials relating to electronic surveillance" under FISA. 50 U.S.C. § 1806(f). Here, Wikimedia is an "aggrieved person" within the meaning of FISA; it has sought to discover information relevant to its challenge to the lawfulness of surveillance conducted

under FISA; and the government has claimed that disclosure of the material to Wikimedia or its counsel would cause harm. *See* Pl. Br. 12 (ECF No. 125-2); Pl. Reply 6–9 (ECF No. 143); Def. Opp. 7–8 (ECF No. 138). The text of Section 1806(f) squarely applies to this fact pattern, and it requires the Court to review in camera the discovery material Wikimedia has sought.

Because the text of Section 1806(f) is clear, the Court need look no further. Nevertheless, Wikimedia pointed to the structure of FISA as reinforcing the text's plain meaning. Among other things, Wikimedia highlighted Section 1810, which creates a civil cause of action for actual or liquidated damages, punitive damages, and attorney's fees, for an "aggrieved person" subject to electronic surveillance in violation of FISA. Congress's enactment of Section 1810 illustrates two critical points. First, Congress intended Section 1806(f) to apply in civil cases, such as those it authorized under Section 1810. *See* Pl. Reply 2, 4–6. Second, the extratextual limitations the government proposes for Section 1806(f) would effectively nullify the civil remedy that Congress created in Section 1810. See Pl. Reply 2, 4–9.

Nothing in the *Al-Haramain* opinion bears on these points.

In *Al-Haramain*, the Ninth Circuit held that Congress did not waive sovereign immunity with respect to actions brought directly against the United States under Section 1810. *See* 705 F.3d at 854–55. In other words, Section 1810's remedies are available only against officials sued in their individual capacities. *See id.* That holding is irrelevant here.[1]

First, regardless of the scope of the remedy in Section 1810, the text of Section 1806(f) is clear, and its in camera review procedure applies in civil cases like this one. *See* H.R. Rep. No. 95-1720 at 31–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4048, 4060–61 ("an in camera and ex parte proceeding is appropriate . . . in both criminal and civil cases"). By attempting to invoke

---

[1] Wikimedia takes no position on the merits of the Ninth Circuit's conclusion in *Al-Haramain*.

the state secrets privilege, Defendants would have the Court ignore the plain language of Section 1806(f) and Congress's express conclusion that claims of national-security harm in civil suits challenging FISA surveillance should be dealt with through in camera review. *See* Pl. Br. 11–19; Pl. Reply 2–9.[2]

Second, if Defendants could invoke the state secrets privilege where Section 1806(f)'s procedures apply, it would drastically undermine the civil remedy that Congress created in Section 1810. *See* Pl. Reply 4–8; *see also id.* at 9 (if "aggrieved person" status were dependent on government notice, it would give the government unilateral control over Section 1806(f)'s procedures and undermine Congress's intent in Section 1810). This is true even if Section 1810 authorizes only individual-capacity suits, because those suits would predictably involve information the government considers to be classified. For example, a plaintiff might seek discovery responses from or a deposition of a defendant officer who possesses sensitive FISA-related information. Or a plaintiff could seek to obtain FISA-related documents directly from a non-party agency. Thus, the United States may have reason to intervene in a Section 1810 suit against an officer in his or her individual capacity, and the Attorney General may have reason to file a declaration attesting to the harm that would result from disclosure of the FISA-related information sought through discovery. *Cf. El-Masri v. United States*, 479 F.3d 296, 299–300 (4th Cir. 2007) ("The United States intervened as a defendant in the district court[.]"). In these circumstances, to ensure that plaintiffs have a meaningful opportunity to challenge unlawful

---

[2] At argument, the government acknowledged that Section 1806(f) applies in civil cases, but puzzlingly suggested that it was limited to some subset of civil cases where the *government* has chosen to rely on FISA-derived evidence. Such a narrow interpretation has no purchase in the expansive language of the statute. Moreover, as explained below, that view would render FISA's in camera review procedure unavailable in civil cases where plaintiffs are pursuing the very remedies Congress established in FISA itself.

surveillance, Congress mandated the application of Section 1806(f)'s in camera review procedure. *See* 50 U.S.C. § 1806(f); H.R. Rep. No. 95-1720 at 31–32 (1978).[3]

Third, even if the United States retains sovereign immunity under Section 1810, it is subject to civil actions under another provision that explicitly relies on FISA's in camera review procedure. *See* 18 U.S.C. § 2712 (providing for "civil actions against the United States"); *id.* § 2712(b)(4) (mandating that FISA's in camera review provisions are to be the "exclusive means" by which courts review surveillance materials, "[n]otwithstanding any other provision of law"); *see also Al-Haramain*, 705 F.3d at 851–53 (discussing 18 U.S.C. § 2712). If there were any question that Congress intended Section 1806(f) to apply in civil actions, Section 2712 puts it to rest. Moreover, as with Section 1810, this provision shows why the government is wrong to argue that the only persons who are "aggrieved" under Section 1806(f) are those who have received official notice of surveillance. *See* Pl. Reply 7–9. If plaintiffs could rely on FISA's in camera review procedure only when the government had already admitted the surveillance, the executive branch would have unilateral control over who could meaningfully pursue the remedies Congress provided under both Sections 1810 and 2712. That outcome would be completely at odds with Congress's intent in creating these remedies for executive branch surveillance abuses.

\*   \*   \*

---

[3] The district court in *Al-Haramain* reasoned, incorrectly, that sovereign immunity would leave plaintiffs with "scant" relief under Section 1810 because "it is only such [federal] officers and employees acting in their official capacities that would engage in surveillance of the type contemplated by FISA." *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 564 F. Supp. 2d 1109, 1125 (N.D. Cal. 2008). However, federal officers and employees can of course be liable under Section 1810 in their individual capacities, just as they may be prosecuted for the same conduct under 50 U.S.C. § 1809. *See Al-Haramain*, 705 F.3d at 854.

In Section 1806(f), as in FISA more broadly, Congress struck a deliberate balance between the need for accountability and the need for secrecy. It reconciled those two needs by mandating, in cases like this one, that courts examine FISA-related materials in camera. This balance accommodates the executive branch's need to safeguard legitimately sensitive information, while also ensuring that plaintiffs like Wikimedia have a meaningful opportunity to challenge unlawful surveillance. Thus, the choice in this case is not between total secrecy and public disclosure. It is a choice between the in camera review procedure Congress expressly mandated in FISA and the executive branch's effort to override that legislative judgment by withholding evidence from the Court. Through Section 1806(f), Congress balanced the interests at stake, and it established a procedure that courts routinely use to review FISA-related materials like those at issue here. Wikimedia is now entitled to what Section 1806(f) requires: disclosure of responsive material *to the Court* for review in camera and ex parte.

Dated: July 6, 2018

Respectfully submitted,

_____
/s/

David R. Rocah (Bar No. 27315)
Deborah A. Jeon (Bar No. 06905)
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF MARYLAND
3600 Clipper Mill Road, #350
Baltimore, MD 21211
Phone: (410) 889-8555
Fax: (410) 366-7838
jeon@aclu-md.org

Benjamin H. Kleine (pro hac vice)
Devon Hanley Cook (pro hac vice)
Molly A. Smolen (pro hac vice)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Phone: (415) 693-2000

_____
/s/

Ashley Gorski (pro hac vice)
(*signed by Ashley Gorski with permission
    of David R. Rocah*)
Patrick Toomey (pro hac vice)
Jonathan Hafetz (pro hac vice)
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
agorski@aclu.org

Alex Abdo (pro hac vice)
Jameel Jaffer (pro hac vice)
KNIGHT FIRST AMENDMENT INSTITUTE
    AT COLUMBIA UNIVERSITY

Fax: (415) 693-2222
bkleine@cooley.com

475 Riverside Drive, Suite 302
New York, NY 10115
Phone: (646) 745-8500
alex.abdo@knightcolumbia.org

*Counsel for Plaintiff*