```
                                                                        1
 1                      UNITED STATES DISTRICT COURT
                           DISTRICT OF MARYLAND
 2
      ---------------------------x
 3                                 :
      WIKIMEDIA FOUNDATION,        :
 4                                 :
                        Plaintiff  :
 5                                 :
                 versus            : Civil Action No.
 6                                 :
      NATIONAL SECURITY AGENCY,    : 15-cv-662
 7                                 :
                        Defendant. : June 29, 2018
 8    ---------------------------x

 9              The above-entitled Motion hearing was held before
      the Honorable T.S. Ellis, III, United States District Judge at
10    the United States District Court Eastern District of Virginia
      - Alexandria Division.
11
                         A P P E A R A N C E S
12
      FOR THE PLAINTIFF:      ALEX ABDO, ESQ.
13                            Knight First Amendment Institute
                              at Columbia University
14                            535 West 116th Street
                              314 Low Library
15                            New York, NY 10027

16                            ASHLEY GORSKI, ESQ.
                              PATRICK TOOMEY, ESQ.
17                            American Civil Liberties Union
                              Foundation
18                            125 Broad Street, 18th Floor
                              New York, NY 10004
19
      FOR THE DEFENDANTS:     JAMES GILLIGAN, DOJ
20                            RODNEY PATTON, DOJ
                              OLIVIA HUSSEY SCOTT, DOJ
21                            United States Department of Justice
                              Civil Division, Federal Programs Branch
22                            20 Massachusetts Ave., N.W., Room 7320
                              Washington, D.C. 20001
23
      OFFICIAL COURT REPORTER:   MS. TONIA M. HARRIS, RPR
24                               United States District Court
                                 Eastern District of Virginia
25                               401 Courthouse Square, Fifth Floor
                                 Alexandria, VA 22314
```

11:55:27

Wikimedia v. NSA

2

**P R O C E E D I N G S**

11:55:27  1

11:55:27  2  (Court proceedings commenced at 11:55 a.m.)

11:55:48  3          THE DEPUTY CLERK:  15-cv-662.  Wikimedia versus

11:55:50  4  National Security Agency, et al.

11:55:50  5          May I have the appearances, please.  First for the

11:55:53  6  plaintiff.

11:56:03  7          THE COURT:  Take a minute.  Who is here for the

11:56:07  8  plaintiff in the NSA Wikimedia case?

11:56:10  9          MS. GORSKI:  Ashley Gorski, with the American Civil

11:56:13  10  Liberties Union, on behalf --

11:56:13  11          THE COURT:  I'm sorry.  Your last name again.

11:56:15  12          MS. GORSKI:  Gorski, G-o-r-s-k-i.

11:56:18  13          On behalf of plaintiff Wikimedia Foundation.  I'm

11:56:24  14  joined at counsel table by my colleague Patrick Toomey, also

11:56:27  15  of the American Civil Liberties Union.  T-o-o-m-e-y.  And Alex

11:56:33  16  Abdo of the Knight First Amendment Institute at Columbia

11:56:38  17  University.

11:56:38  18          THE COURT:  All right.  And who will argue today?

11:56:42  19          MS. GORSKI:  I will, Your Honor.

11:56:43  20          THE COURT:  All right.  Thank you.

11:56:43  21          And who is here for the defendant?

11:56:48  22          MR. GILLIGAN:  James Gilligan, Your Honor, with the

11:56:50  23  Department of Justice.  With me at counsel table are my

11:56:52  24  colleagues Rodney Patton and Olivia Hussey Scott.

11:56:56  25          THE COURT:  And who will argue today?

Wikimedia v. NSA

3

| | | |
|---|---|---|
| 11:56:58 | 1 | MR. GILLIGAN:  I will, Your Honor. |
| 11:56:59 | 2 | THE COURT:  All right.  You may be seated. |
| 11:57:03 | 3 | Let me see.  I think what we're here on is, |
| 11:57:05 | 4 | deceptively, the motion to compel, but it really involves a |
| 11:57:14 | 5 | good deal more than that.  Some history needs to be repeated. |
| 11:57:22 | 6 | The gallery has emptied out fairly significantly. |
| 11:57:28 | 7 | All right.  The case is here alleging violations of |
| 11:57:37 | 8 | the Fourth Amendment and other matters by the NSA and its |
| 11:57:40 | 9 | monitoring programs and efforts, but at the threshold there is |
| 11:57:47 | 10 | a standing dispute and a standing question. |
| 11:57:55 | 11 | And the parties -- as I recall, I gave the parties |
| 11:57:56 | 12 | an opportunity to conduct some discovery in order for the |
| 11:58:01 | 13 | standing issue to be presented. |
| 11:58:05 | 14 | And I'm going to ask you a question in a minute, |
| 11:58:08 | 15 | Ms. Gorski, but you may be seated if you wish. |
| 11:58:15 | 16 | And so, I think I allowed three or four months of |
| 11:58:18 | 17 | discovery.  And then came a question in the course of |
| 11:58:24 | 18 | discovery that the government asserted the state secrets |
| 11:58:36 | 19 | privilege on, and they dotted the T's and crossed the I's to |
| 11:58:42 | 20 | assert that privilege.  That is all of the authorities that |
| 11:58:44 | 21 | are required in order for a valid assertion of the privilege |
| 11:58:49 | 22 | of were their affidavits and their statements. |
| 11:58:54 | 23 | The real question presented is whether the state |
| 11:58:58 | 24 | secrets privilege survives the enactment of FISA.  That's the |
| 11:59:10 | 25 | real question presented.  If it does, then, of course, the |

Wikimedia v. NSA

4

11:59:15  1  government's assertion of the state secrets privilege is

11:59:20  2  affected.  If it doesn't, if FISA displaces it, then, as I

11:59:28  3  understand it, that would mean that whatever volume of

11:59:32  4  documents would be responsive to the interrogatory or request

11:59:38  5  for production that would be included in that interrogatory or

11:59:44  6  request for production, would be submitted in camera for the

11:59:48  7  Court's eyes only to review and determine whether or not this

11:59:55  8  was evidence that the plaintiffs had actually been surveilled

12:00:02  9  so that they could show an injury in fact.

12:00:06  10         I think that's generally what I understand to be

12:00:09  11  what's being presented today.

12:00:11  12         Am I correct, Ms. Gorski?

12:00:15  13         MS. GORSKI:  Yes, Your Honor, with one

12:00:17  14  clarification.  Should the Court conclude that the state

12:00:20  15  secrets privilege is not preempted by FISA it would still need

12:00:25  16  to undertake an assessment per the Fourth Circuit's decision

12:00:30  17  in *Abilt*, that the government has actually demonstrated a

12:00:33  18  reasonable danger of harm to national security through

12:00:36  19  disclosure of the information.

12:00:38  20         THE COURT:  Now, how do I do that without examining

12:00:41  21  the affidavits?  Or if I just examine the affidavits, they're

12:00:45  22  fairly conclusory on that point?

12:00:48  23         You don't need to answer that now.  But it's an

12:00:52  24  obvious question, and it isn't answered by the Fourth Circuit.

12:00:55  25         But it seems to me that if you're going to undertake

Wikimedia v. NSA

5

| | |
|---|---|
| 12:00:57 | 1  that effort, you need to know what it is that is being |
| 12:01:03 | 2  withheld.  But we will cross that bridge only if and when we |
| 12:01:07 | 3  need to. |
| 12:01:09 | 4          You're the movant, and so I'll hear from you first |
| 12:01:13 | 5  on the question whether FISA displaces the state secrets |
| 12:01:17 | 6  privilege. |
| 12:01:19 | 7          MS. GORSKI:  Thank you, Your Honor. |
| 12:01:20 | 8          FISA's procedures apply here for two reasons: |
| 12:01:24 | 9  First, Congress displaced the state secrets privilege through |
| 12:01:28 | 10 Section 1806(f).  Congress spoke clearly, directly, and |
| 12:01:32 | 11 unequivocally.  When a party like Wikimedia seeks to discover |
| 12:01:36 | 12 information related to FISA surveillance, that information |
| 12:01:41 | 13 should be reviewed in camera, not withstanding any other law. |
| 12:01:45 | 14         This is because FISA was designed as a comprehensive |
| 12:01:46 | 15 scheme to limit executive branch authority over electronic |
| 12:01:49 | 16 surveillance and to subject that surveillance to judicial |
| 12:01:52 | 17 review, including in cases like this one. |
| 12:01:54 | 18         Second, although the government contends that |
| 12:01:57 | 19 Wikimedia does not satisfy the statutory criteria in 1806(f), |
| 12:02:03 | 20 the statute claiming -- |
| 12:02:03 | 21         THE COURT:  I'm sorry.  The statutory criteria and |
| 12:02:04 | 22 what? |
| 12:02:05 | 23         MS. GORSKI:  In Section 1806(f), the relevant |
| 12:02:08 | 24 statutory provisions. |
| 12:02:09 | 25         The statute plainly applies here.  Wikimedia is an |

Wikimedia v. NSA

6

| | |
|---|---|
| 12:02:13 | 1 |

aggrieved person within the meaning of Section 1806(f) and

it's asking the Court to review the material in camera and ex

parte to determine whether the surveillance was lawfully

authorized and conducted.

         Accordingly, Section 1806(f) applies, and the Court

should review the government's responses in camera.

         And turning to elaborate on Congress's displacement

of the privilege, through Section 1806(f) Congress created

specific and detailed procedures for courts to apply when a

party like Wikimedia seeks information related to FISA

surveillance, and when the government asserts that disclosure

of that information would result in harm to national security.

         In that situation, rather than excluding the

evidence from the case altogether, 1806(f) mandates in camera

review.

         THE COURT:  Can I stop you for just a moment here.

         MS. GORSKI:  Yes.

         THE COURT:  Because you're, I think, proceeding

logically through your argument. But at the outset, can you

tell me what case establishes the steps that a Court should

take in determining whether a statute, such as FISA, has

displaced the state secrets.

         In other words, what are the analytical steps?

         MS. GORSKI:  Your Honor, when Congress speaks

directly to an issue of federal common law, Congress can --

Wikimedia v. NSA

7

12:03:34  1  can aggregate federal common law, and the state secrets

12:03:38  2  privilege is grounded in federal common law.

12:03:40  3       Congress has also occupied the field through its --

12:03:42  4       THE COURT:  What cases would you chiefly rely on for

12:03:44  5  that overriding principle?

12:03:46  6       MS. GORSKI:  *City of Milwaukee* is one of the cases

12:03:49  7  that we would rely on for that principle, Your Honor.

12:03:52  8       THE COURT:  All right.  Go on.  All right.  You can

12:03:54  9  go back now to your argument about why you think the

12:03:58  10  provisions of FISA are adequate to displace the state secrets

12:04:02  11  privilege.

12:04:03  12       MS. GORSKI:  By mandating in camera review, 1806(f)

12:04:09  13  forecloses the government's ability to assert the state

12:04:12  14  secrets privilege or to rely on the state secrets privilege to

12:04:15  15  exclude the information from the case.  And this also confirms

12:04:17  16  not only by the text of the statute, but by the structure and

12:04:21  17  the legislative history of FISA.

12:04:23  18       In the 1970's, the Church Committee, after

12:04:25  19  uncovering a long history of executive branch surveillance

12:04:28  20  abuses, recommended substantial surveillance reform.  It

12:04:31  21  recommended that Congress implement civil remedy, and it

12:04:35  22  recommended discovery procedures to facilitate civil

12:04:38  23  litigation.

12:04:39  24       Shortly thereafter, Congress enacted FISA.  It

12:04:41  25  implemented that civil remedy in Section 1810 of 50 U.S.C.

Wikimedia v. NSA

8

12:04:48  1   1810, and it also, through 1806(f), specified the particular

12:04:52  2   procedures to apply when civil litigants seek to discover

12:04:56  3   information related to FISA surveillance, and when they are

12:04:56  4   aggrieved persons.

12:05:00  5           And 1806(f) reflects the balance that Congress

12:05:02  6   struck between safeguarding sensitive executive branch

12:05:06  7   information and ensuring that civil litigants have an actual

12:05:10  8   and meaningful opportunity to pursue these remedies.

12:05:12  9           In the 2008 decision in the *In re NSA Telcoms* case

12:05:21  10  here is instructive.  There, the courts have thoroughly

12:05:26  11  assessed the arguments that the government raises here.

12:05:29  12          THE COURT:  Is this a California case?

12:05:31  13          MS. GORSKI:  It is one of the California cases, Your

12:05:34  14  Honor.

12:05:34  15          THE COURT:  So it is a district court case?

12:05:34  16          MS. GORSKI:  It is a district court case.

12:05:36  17          THE COURT:  Did it go to the Ninth Circuit?

12:05:38  18          MS. GORSKI:  The case was up and down several times,

12:05:40  19  Your Honor.

12:05:40  20          THE COURT:  Was this issue up?

12:05:42  21          MS. GORSKI:  When the preemption issue was up before

12:05:46  22  the Ninth Circuit, the Ninth Circuit remanded for the district

12:05:48  23  court to asses this question.

12:05:51  24          THE COURT:  Has it been back on that issue?

12:05:54  25          MS. GORSKI:  Not on that precise --

Wikimedia v. NSA

9

12:05:56  1        THE COURT:  I just want to be clear that the only

12:05:58  2    authorities we have are two district court cases, but no

12:06:04  3    circuit court cases.

12:06:05  4        MS. GORSKI:  Yes, Your Honor, on this precise

12:06:07  5    question.

12:06:08  6        THE COURT:  Go ahead.  That doesn't mean that

12:06:10  7    district courts didn't resolve it correctly, but it always

12:06:14  8    helps to have a circuit opinion.

12:06:19  9        MS. GORSKI:  And, Your Honor, turning now to the

12:06:22  10   statutes requirements, Wikimedia satisfies them.  Wikimedia is

12:06:26  11   an aggrieved person.  Section 1801 of FISA makes clear that

12:06:32  12   persons are aggrieved if their communications are subject to

12:06:35  13   FISA surveillance.

12:06:37  14        Wikimedia has set forth specific highly detailed

12:06:40  15   factual allegations explaining how its communications are

12:06:44  16   subject to the surveillance at issue.  The Fourth Circuit

12:06:46  17   deemed those allegations plausible.  Wikimedia survived a

12:06:49  18   motion to dismiss.  And now, Wikimedia is entitled to

12:06:52  19   discovery, and it is entitled to the procedures in Section

12:06:55  20   1806(f).

12:06:57  21        THE COURT:  Just out of curiosity, wouldn't your

12:07:01  22   desire to access these documents exist even if I were to find

12:07:05  23   standing based only on the particularized allegations you've

12:07:11  24   already made?

12:07:12  25        MS. GORSKI:  Yes, Your Honor.  Because the Court

Wikimedia v. NSA

10

12:07:16  1  bifurcated the standing and merits questions, Wikimedia would

12:07:21  2  still seek the opportunity to seek some discovery related --

12:07:25  3          THE COURT:  Because that clearly would be relevant

12:07:27  4  to your merits, I take it.

12:07:29  5          MS. GORSKI:  Much of the discovery related to

12:07:30  6  standing is also relevant to the merits because the issues are

12:07:33  7  intertwined.  However, there would potentially still be other

12:07:39  8  discoveries, much smaller amounts, that Wikimedia would seek

12:07:41  9  relevant to the merits questions.

12:07:43  10         THE COURT:  All right.  Go on.

12:07:45  11         MS. GORSKI:  The government contends that the only

12:07:47  12 individuals who are aggrieved are those who receive notice

12:07:50  13 from the government of that status, but this argument is at

12:07:53  14 odds with the plain text of 1806(f), which requires in camera

12:07:58  15 review in three situations, and including situations other

12:08:02  16 than when the government provides notice.

12:08:04  17         1806(f) provides written camera review when the

12:08:09  18 government provides notice to a defendant, when a defendant

12:08:14  19 seeks to move to suppress information obtained or derived from

12:08:18  20 FISA surveillance, regardless of whether that defendant has

12:08:21  21 received notice, and in the third situation, when an aggrieved

12:08:23  22 person makes any other motion to discover information related

12:08:28  23 to FISA surveillance.

12:08:30  24         What the government is seeking to do here is to

12:08:34  25 retain unilateral control over who can utilize these

Wikimedia v. NSA

11

| 12:08:39 | 1 | procedures in 1806(f).  And if the government were correct

12:08:40  2  that the aggrieved person status is predicated on notice, it

12:08:44  3  would effectively nullify in camera review under 1806(f), and

12:08:50  4  it would severely undermine FISA's civil remedy in Section

12:08:54  5  1810.

12:08:54  6      The government's arguments is also at odds with

12:08:55  7  other provisions of FISA, specifically Sections 1806(f) -- I'm

12:09:01  8  sorry, Section 1806(c) and (d).  Those are FISA notice

12:09:05  9  provisions, and they contemplate that notice is provided to an

12:09:09  10  aggrieved person, not that notice is a precondition to

12:09:12  11  aggrieved person status.

12:09:13  12      I would also note that one of the district courts

12:09:16  13  that we've discussed, in 2009, the Court in *In Re NSA Telcom*

12:09:21  14  considered and expressly rejected the notion that aggrieved

12:09:25  15  person status is predicated on notice.  There, it concluded

12:09:29  16  that the plaintiff's specific nonconjectural allegations were

12:09:32  17  sufficient for it to proceed as an aggrieved person under

12:09:35  18  Section 1806(f).

12:09:37  19      The government also contends that the Court is not

12:09:41  20  reviewing this information to determine whether the

12:09:44  21  surveillance was lawfully authorized and conducted, and

12:09:48  22  accordingly, the statute, in the government's view, does not

12:09:50  23  apply.  But this is plainly a review for lawfulness.

12:09:54  24      As the Court has recognized, the standing and merits

12:09:56  25  issue here are closely intertwined.  Standing, logically, is a

Wikimedia v. NSA

12

12:09:59  1   part of a lawfulness determination.  And most fundamentally,

12:10:03  2   it cannot be the case that simply because the government has

12:10:06  3   sought to bifurcate these proceedings, as a matter of judicial

12:10:10  4   economy, that 1806(f) is now unavailable to plaintiff.

12:10:14  5        I would also note that the Court's ruling on

12:10:19  6   standing need not disclose any sensitive or harmful

12:10:24  7   information, and this is for several reasons.

12:10:26  8        First, the Court will have available to it a pool of

12:10:29  9   evidence, public evidence, and evidence that its reviewing in

12:10:33  10  camera, and its opinion need not reveal the contents of any

12:10:36  11  particular piece of evidence that it's reviewing.

12:10:39  12       Second, neither Wikimedia nor the public knows

12:10:40  13  exactly what evidence the government possesses in response to

12:10:43  14  any particular requests which creates even more opacity around

12:10:49  15  the in camera review process.

12:10:51  16       And third, and perhaps most importantly, the legal

12:10:55  17  standard governing the standing inquiry confirms that the

12:10:57  18  Court need not disclose sensitive information by ruling on

12:11:01  19  Wikimedia's standing, and that's because the standard is

12:11:03  20  substantial risk.  The Court need not conclude that Wikimedia

12:11:07  21  was definitely subject to surveillance in the past, or that

12:11:09  22  Wikimedia definitely will be subject to surveillance in the

12:11:12  23  future.

12:11:12  24       The question is whether there's a substantial risk

12:11:15  25  of surveillance of Wikimedia's voluminous communications, more

Wikimedia v. NSA

13

| | |
|---|---|
| 12:11:19 | 1 |

than a trillion communications each year with users in

virtually every country on earth.  And I would also note that

the government's declarations describe many harms that would

result from disclosure of the information at issue.  But even

if those harms were to result from disclosure to plaintiffs,

they cannot prevent disclosure to the Court.

          To the contrary, that is exactly the scenario that

Section 1806(f) contemplates.  And when an aggrieved person,

like Wikimedia, seeks to discover FISA-related material,

1806(f) applies, and that material must be reviewed in camera.

          I would like to touch briefly on some of the

practical matters that the Court may be considering.

Plaintiff, of course, urges the Court to grant the motion to

compel.  Once it does so, it's free to prioritize and

structure its review in the way that makes the most sense.  I

would assume beginning with the Wikimedia's specific discovery

requests.  We think it's very likely that the Court can

resolve this question on the basis of a small handful of

documents.

          THE COURT:  All right.  Thank you.

          MS. GORSKI:  Thank you.

          THE COURT:  For the government.

          MR. GILLIGAN:  Your Honor, I'm taking my cue from

what you said at the outset of this hearing.  I will address

first the issues under Section 1806(f).

Wikimedia v. NSA

14

| | | |
|---|---|---|
| 12:12:50 | 1 | I just would like to say that we believe that the |
| 12:12:57 | 2 | declarations we've submitted, in particular the classified |
| 12:12:58 | 3 | declaration by the deputy director of the NSA, which is some |
| 12:13:04 | 4 | 60 pages long, provides a great deal of information about why |
| 12:13:07 | 5 | the discovery that plaintiff is seeking in the disclosure of |
| 12:13:16 | 6 | the information they are trying to compel the government to |
| 12:13:19 | 7 | produce, would be extraordinarily harmful to national |
| 12:13:21 | 8 | security. |
| 12:13:22 | 9 | We believe that it certainly meets the standard set |
| 12:13:25 | 10 | forth in the *Reynolds* case, which is a reasonable danger that |
| 12:13:30 | 11 | compulsion of the evidence would reveal matters involving |
| 12:13:35 | 12 | diplomatic and military affairs that ought not be revealed. |
| 12:13:39 | 13 | Those judgments also under the standards -- |
| 12:13:39 | 14 | THE COURT:  I was pleased to see that the *Reynolds* |
| 12:13:42 | 15 | case is still cited.  I remember -- didn't the *Reynolds* case |
| 12:13:51 | 16 | arrive in the '40s? |
| 12:13:51 | 17 | MR. GILLIGAN:  1953, Your Honor, as I recall. |
| 12:13:55 | 18 | THE COURT:  1953.  It involved -- I'm trying to |
| 12:13:57 | 19 | remember the type of aircraft it involved. |
| 12:14:00 | 20 | MR. GILLIGAN:  It was a military aircraft of some |
| 12:14:04 | 21 | sort, I believe, Your Honor.  It certainly had military |
| 12:14:05 | 22 | equipment on it. |
| 12:14:06 | 23 | THE COURT:  So 60-plus years later, it still has |
| 12:14:11 | 24 | some vitality, you think? |
| 12:14:14 | 25 | MR. GILLIGAN:  Oh, absolutely.  It's -- |

Wikimedia v. NSA

15

12:14:17  1            THE COURT:  All right.  Let's go on.

12:14:20  2            MR. GILLIGAN:  If there is --

12:14:22  3            THE COURT:  I was just remembering because *Reynolds*

12:14:24  4   was a big deal when I was a very young lawyer.

12:14:29  5            MR. GILLIGAN:  It is still the wellspring of this

12:14:31  6   state secrets doctrine today, Your Honor.

12:14:32  7            THE COURT:  But it's a reminder of how old I am.

12:14:35  8   The type of aircraft involved in that, you can only find in

12:14:40  9   museums.

12:14:42  10            It's an interesting recollection, but I'm familiar

12:14:45  11   with *Reynolds*.  Go on.

12:14:50  12            MR. GILLIGAN:  Okay.  Just to wrap up the point,

12:14:51  13   Your Honor, if there is any concern in the Court's mind about

12:14:54  14   the adequacy of our assertion of the state secrets privilege,

12:14:57  15   we would like to address that.

12:14:57  16            THE COURT:  No, as I said at the outset, I think you

12:15:02  17   have dotted the I's and crossed the T's required to assert the

12:15:08  18   state secrets privilege.

12:15:10  19            The question is whether the state secrets privilege

12:15:16  20   has been superseded by FISA.

12:15:23  21            That's the question, isn't it?

12:15:23  22            MR. GILLIGAN:  If that's the question on the Court's

12:15:25  23   mind, then I will address --

12:15:27  24            THE COURT:  Well, do you agree that that's the

12:15:29  25   question?

─Wikimedia v. NSA─

16

12:15:29  1          MR. GILLIGAN:  That's the question that the

12:15:31  2    plaintiffs have put at issue, yes.

12:15:33  3          THE COURT:  All right.  Now, tell me why you think

12:15:34  4    the state secret remains available to the government in the

12:15:40  5    face of FISA.

12:15:42  6          MR. GILLIGAN:  Well, because, Your Honor, even if

12:15:45  7    the -- even if this provision of FISA Section 1806(f) did

12:15:52  8    displace the state secrets privilege in proceedings to which

12:15:55  9    it applies, a conclusion that we contest, but even just

12:16:00  10   assuming for the sake of argument that it did displace, in

12:16:03  11   proceedings to which it applies, this is not such a

12:16:06  12   proceeding.

12:16:06  13          This -- the statute says that when the government

12:16:09  14   seeks to use evidence derived from electronic surveillance

12:16:15  15   against an aggrieved party, a defined term under FISA, and by

12:16:20  16   its expressed terms, the statute authorizes in camera review

12:16:23  17   of materials related to the electronic surveillance for the

12:16:27  18   purpose of determining the legality of the surveillance.

12:16:30  19          That is not the determination that the plaintiff is

12:16:33  20   asking you to make with review of the evidence that it wishes

12:16:36  21   us --

12:16:37  22          THE COURT:  Isn't standing part of the legality

12:16:41  23   determination?

12:16:42  24          MR. GILLIGAN:  I think, Your Honor, that, no, it is

12:16:43  25   not.  Standing the merits are fundamentally different

Wikimedia v. NSA

17

12:16:46  1  inquiries.  A determination outstanding to challenge a

12:16:50  2  defendant's conduct does not inform whether the defendant's

12:16:54  3  conduct was legal or not.

12:16:56  4       It only tells us whether the plaintiff has a right

12:16:58  5  to seek that determination of legality one way or the other.

12:17:03  6  They are entirely separate questions.

12:17:06  7       The fact that certain evidence may be relevant to

12:17:10  8  both questions, standing and the merits, doesn't make a

12:17:14  9  difference because the only determination for which the

12:17:19  10  statute authorizes in camera review of classified evidence is

12:17:24  11  the determination of the legality of the challenge conduct.

12:17:29  12       We're dealing here with a separate question, which

12:17:32  13  is whether or not the plaintiff is actually an aggrieved

12:17:36  14  person.  That is to say, a target or subject to surveillance

12:17:39  15  who would have standing to challenge that conduct.  That is

12:17:43  16  not the determination that the statute says, in expressed

12:17:47  17  terms, in camera review is authorized for.  It is only

12:17:51  18  authorized for the determination of legality.

12:17:54  19       Plaintiff may have adequately alleged its standing,

12:17:57  20  that is, the holding of the Fourth Circuit in this case, but

12:18:00  21  now the plaintiff is attempting to prove that.  And the

12:18:06  22  procedures authorized under Section 1806(f) were established,

12:18:13  23  again by the statute's plain terms, only for the purpose of

12:18:17  24  determining whether -- approving whether or not the alleged

12:18:22  25  surveillance was legal or not, not whether a particular party

Wikimedia v. NSA

18

12:18:25  1    was subject to that surveillance.

12:18:28  2          There's a third reason why this statute doesn't

12:18:31  3    apply here, Your Honor, although we think -- just to be clear,

12:18:37  4    this entire discussion, seems to us, can end simply by looking

12:18:44  5    at the statute's expressed instruction that the proceeding

12:18:48  6    authorizes for the purpose of determining legality.  That is

12:18:51  7    not what this proceeding is about.  We think that that

12:18:54  8    discussion can end there.

12:18:56  9          But there is the further point, in terms of the

12:19:00  10   statute's applicability, that the statute was intended to

12:19:06  11   apply in situations where it is the government that is seeking

12:19:10  12   to use surveillance-based evidence against an opposing party,

12:19:15  13   and not in situations where it is a plaintiff that wishes to

12:19:18  14   use classified information for purposes of its case.

12:19:22  15         That is so, we think, for the following reasons.  As

12:19:29  16   Ms. Gorski was saying, the statute provides for three

12:19:33  17   situations in which it applies.  When the government gives

12:19:38  18   notice of an intent to use surveillance-based evidence in a

12:19:43  19   proceeding against an opposing party -- it could be criminal,

12:19:47  20   it could be civil, there's -- it applies where an aggrieved

12:19:52  21   party moves to suppress evidence, surveillance-based evidence

12:19:57  22   that the government intends to use, and then there's the

12:20:00  23   catchall clause that the plaintiff relies on here, which says

12:20:04  24   that the procedure can apply when an aggrieved person moves

12:20:08  25   under any other statute or rule to obtain materials related to

12:20:13  1  electronic surveillance.

12:20:14  2        We submit that this third catchall phrase for

12:20:20  3  motions made under any statute or rule does not authorize the

12:20:23  4  kind of in camera proceeding that the plaintiff envisions

12:20:26  5  here, because, as I said, it is the plaintiff that is seeking

12:20:29  6  to use classified evidence for its purposes, not the

12:20:33  7  government that proposes to use classified evidence in a case,

12:20:37  8  surveillance-based evidence.

12:20:39  9        Because if this language were taken literally to

12:20:42  10  mean any type of motion authorizes the use of this procedure,

12:20:48  11  that it would render the references in the statute to the

12:20:52  12  earlier sections concerning governmental notification and a

12:20:58  13  plaintiff's motion to suppress entirely meaningless and

12:21:04  14  superfluous, and it would expand the reach of the statute to

12:21:08  15  situations where in camera review of the evidence would not be

12:21:12  16  a way of protecting classified information from disclosure,

12:21:16  17  but contrary to Congress's purposes when it enacted this

12:21:20  18  provision, it would actually result in the harmful disclosure

12:21:26  19  of classified information by identifying targets and subjects

12:21:30  20  of government's surveillance.

12:21:33  21        So we submit that to avoid this result, the statute

12:21:36  22  should be construed in accordance with the well-known

12:21:42  23  statutory maximum that general words following specific words

12:21:48  24  in a statute should be construed to embrace only similar items

12:21:54  25  to those enumerated by the specific terms.

Wikimedia v. NSA

20

| 12:21:57 | 1 | And applying this canon to Section 1806(f), the |

12:21:57  1        And applying this canon to Section 1806(f), the

12:22:02  2   scope of the residual phrase that plaintiffs is relying on

12:22:05  3   here can properly be understood by reference to the enumerated

12:22:10  4   categories rather than adopting an interpretation under which

12:22:14  5   the enumerated categories are rendered meaningless and the

12:22:18  6   tail of the statute winds up wagging the dog.

12:22:21  7        That's the approach, the interpretive approach,

12:22:25  8   taken by the Supreme Court in such cases as *Gustafson*, which

12:22:30  9   is cited in the plaintiff's reply brief, as well as by the

12:22:34  10  Supreme Court in *Circuit City Stores*.

12:22:37  11       THE COURT:  There's a Latin principle that describes

12:22:42  12  that to shy away from it.

12:22:43  13       MR. GILLIGAN:  I was trying not to have to pronounce

12:22:45  14  that, Your Honor.

12:22:46  15       It is as ejusdem generis and noscitur a sociis.

12:22:54  16       THE COURT:  That's correct.  But if you've gone to

12:22:55  17  law school as long ago as I did, it would have a familiar ring

12:23:00  18  to you.

12:23:00  19       All right.  Thank you.  I understand the

12:23:03  20  government's argument and I understand Wikimedia's argument.

12:23:08  21       MR. GILLIGAN:  Your Honor, may I simply address the

12:23:10  22  point that the statute doesn't apply here principally because

12:23:15  23  we're not talking about a determination --

12:23:18  24       THE COURT:  Pretty central point to the motion to

12:23:20  25  compel and the assertion of the state secret privilege.

Wikimedia v. NSA

21

| | | |
|---|---|---|
| 12:23:23 | 1 | MR. GILLIGAN:  It is very central, Your Honor.  And |
| 12:23:26 | 2 | we think that again -- |
| 12:23:26 | 3 | THE COURT:  What else do you want to -- I don't have |
| 12:23:28 | 4 | much time. |
| 12:23:29 | 5 | MR. GILLIGAN:  I understand. |
| 12:23:29 | 6 | Well, there's the question of whether the statute |
| 12:23:31 | 7 | displaces the state secrets privilege under any circumstances. |
| 12:23:35 | 8 | And we think that -- |
| 12:23:36 | 9 | THE COURT:  Do I have to decide that? |
| 12:23:38 | 10 | MR. GILLIGAN:  Not if -- |
| 12:23:39 | 11 | THE COURT:  I don't, do I? |
| 12:23:40 | 12 | It's under these circumstances, does it -- |
| 12:23:43 | 13 | MR. GILLIGAN:  Certainly under these circumstance. |
| 12:23:45 | 14 | The plaintiff's argument is that the statute applies in these |
| 12:23:48 | 15 | circumstances. |
| 12:23:48 | 16 | And our position is that even if it applied in these |
| 12:23:52 | 17 | circumstances, it would not displace the state secrets |
| 12:23:55 | 18 | privilege. |
| 12:23:55 | 19 | THE COURT:  Why not? |
| 12:23:56 | 20 | MR. GILLIGAN:  Because there is not a clear |
| 12:23:58 | 21 | statement of intent in the statute or its legislative history |
| 12:24:03 | 22 | to displace the state secrets privilege, which this Court |
| 12:24:08 | 23 | recognized in *El-Masri,* and the Fourth Circuit affirmed, is a |
| 12:24:11 | 24 | constitutionally based privilege that is necessary to promote |
| 12:24:14 | 25 | the executive's proper discharge of its responsibility under |

Wikimedia v. NSA

22

12:24:18  1   Article II of the Constitution to provide for the national

12:24:19  2   defense.

12:24:19  3         THE COURT:  Of course.  *El-Masri* was a very

12:24:24  4   different case.

12:24:26  5         I didn't have to puzzle over the puzzle that you all

12:24:29  6   have presented me in *El-Masri*.

12:24:32  7         MR. GILLIGAN:  There are actually some similarities

12:24:36  8   between this case and *El-Masri*, Your Honor.

12:24:38  9         But to focus --

12:24:38 10         THE COURT:  I gave effect to the state secrets

12:24:42 11   privilege.  That was affirmed by the Fourth Circuit.  I

12:24:45 12   understand that.

12:24:45 13         MR. GILLIGAN:  Yes.

12:24:45 14         THE COURT:  Tell me anything else in the next minute

12:24:48 15   and a half, because I think I've heard plenty.

12:24:51 16         MR. GILLIGAN:  In short, Your Honor, the state

12:24:58 17   secrets privilege is a privilege of constitutional dignity.

12:25:02 18   It is not a mere federal common law rule of evidence.

12:25:04 19         Therefore, to displace, it would require a clear

12:25:07 20   statement by Congress in the text of the statute in order to

12:25:13 21   ensure that Congress has confronted the constitutional issues

12:25:17 22   that could be raised by essentially determining to deprive the

12:25:22 23   executive of its ability to protect information that in the

12:25:22 24   interest of national security cannot be disclosed.

12:25:28 25         THE COURT:  I understood what you said at the outset

Wikimedia v. NSA

23

| | |
|---|---|
| 12:25:30 | 1 |
| 12:25:35 | 2 |
| 12:25:38 | 3 |
| 12:25:40 | 4 |
| 12:25:43 | 5 |
| 12:25:49 | 6 |
| 12:25:50 | 7 |
| 12:25:54 | 8 |
| 12:25:59 | 9 |
| 12:26:03 | 10 |

12:25:30  1    to be something like the state secrets privilege is

12:25:35  2    constitutional, and then I didn't get that word.

12:25:38  3              Did you say "dignity"?

12:25:40  4              MR. GILLIGAN:  It is a privilege of constitutional

12:25:43  5    dignity.  I believe that is a term that Your Honor used in the

12:25:49  6    *El-Masri* case.

12:25:50  7              That being the case, a clear statement is required,

12:25:54  8    not the less rigorous standard applied for displacement of

12:25:59  9    mere rules of common law, such as common law rules of

12:26:03  10   evidence.

12:26:03  11             That is, by the way, the standard applied by the

12:26:06  12   Northern District of California in the *NSA Telcom Records*

12:26:10  13   case.  It expressly refused, actually, to acknowledge the

12:26:14  14   constitutional statute of the state secrets privilege and on

12:26:18  15   that basis applied a lower standard to find displacement.

12:26:21  16             That approach to this issue cannot be reconciled

12:26:25  17   with *El-Masri*, which, again, says both this Court and the

12:26:29  18   Fourth Circuit recognized it is a privilege of constitutional

12:26:33  19   dignity requires a clear statement before it could be

12:26:37  20   displaced.

12:26:37  21             One last thing, Your Honor.  On the plaintiff's

12:26:42  22   argument that no harm would come from engaging in the kind of

12:26:46  23   in camera review that they're suggesting here.

12:26:50  24             That argument cannot be reconciled with the Supreme

12:26:55  25   Court's observation in *Amnesty International,* in footnote 4 of

Wikimedia v. NSA

24

12:27:00    1    its opinion, that ex parte review of classified information,

12:27:03    2    in order then for a Court to make public findings about

12:27:06    3    whether a plaintiff claiming unlawful surveillance has

12:27:10    4    standing would itself be harmful to national security by

12:27:14    5    revealing who is and who hasn't been subject to government

12:27:19    6    surveillance.

12:27:19    7           Revealing whom and who hasn't been a target of

12:27:22    8    government surveillance can reveal all sorts of information

12:27:25    9    that our adversaries can use to evade surveillance and to

12:27:29   10    deprive the NSA and the government of critical foreign

12:27:33   11    intelligence information.  And that is as true here, for the

12:27:35   12    reasons explained in our classified declarations, as it would

12:27:38   13    be in any other case.

12:27:39   14           And finally, Your Honor, I think it also must be

12:27:42   15    recalled.  The plaintiff is not asking the Court to fashion a

12:27:45   16    rule and interpretation and approach to 1806(f) that would

12:27:49   17    apply in this case alone.  They're asking for a construction

12:27:52   18    of the statute that would apply in any case where any

12:27:54   19    plaintiff comes to Court and says, "I've been subject to

12:27:58   20    surveillance and I want to use 1806(f) to find out whether I

12:28:02   21    have standing or not."

12:28:04   22           And that rule, if adopted, would apply in any case,

12:28:07   23    no matter how detrimental to national security it might be, to

12:28:13   24    reveal whether or not that particular party were subject to

12:28:13   25    government surveillance.

─────Wikimedia v. NSA─────

25

| | |
|---|---|
| 12:28:14 | 1 |

                    THE COURT:  All right.  Thank you.

12:28:18  2        MS. GORSKI:  Your Honor, very briefly. Mr. Gilligan

12:28:24  3   is simply incorrect about the Court's approach in the *In re*

12:28:28  4   *NSA Telcoms* case.  In that case, the Court acknowledged that

12:28:32  5   the states secret privilege performs a function of

12:28:32  6   constitutional significance, and it nevertheless concluded

12:28:35  7   that Section 1806(f) preempts the state secrets privilege.

12:28:40  8   That language that performs the function of constitutional

12:28:42  9   significance language is the same language that the Fourth

12:28:45  10  Circuit used in *El-Masri*.

12:28:47  11       In addition, even if a clear statement standard

12:28:51  12  applies, 1806(f) speaks clearly to the issue.  It provides for

12:28:56  13  in camera review in precisely the situation presented here.

12:29:00  14       And none of the cases that the government cites

12:29:03  15  requires some kind of magic words requirement whereby in order

12:29:07  16  to displace, even if privilege of constitutional significance,

12:29:10  17  Congress would have to say explicitly, "We are displacing the

12:29:15  18  privilege."

12:29:15  19       The fact that 1806(f) prescribes specific procedures

12:29:18  20  to apply in this exact circumstance is sufficient to displace

12:29:22  21  the privilege.  And in many respects, the government's

12:29:25  22  argument is perplexing because on the one hand, it seems on

12:29:28  23  the government's theory not even an individual who receives

12:29:32  24  notice of FISA surveillance can use 1806(f), but at the same

12:29:36  25  time the government does not explicitly say that 1806(f) is

Wikimedia v. NSA

26

12:29:40  1  unconstitutional.

12:29:40  2          I think it is notable that the government doesn't

12:29:43  3  take that position, because under the analysis in *Youngstown*,

12:29:47  4  a familiar analysis, the executive branch would lose.

12:29:50  5          This is an area in which the executive branch and

12:29:53  6  Congress have concurrent authority.  The executive branch

12:29:55  7  cannot simply make a raw assertion of power.  Here, Congress

12:29:59  8  has regulated.  Congress has spoken clearly and directly to

12:30:02  9  the issue.

12:30:03  10         Second, Wikimedia --

12:30:06  11         THE COURT:  Make it final.  I don't have any more

12:30:09  12  time.  Say what you need to say and say it succinctly,

12:30:16  13  quickly.

12:30:16  14         MS. GORSKI:  Yes, Your Honor.

12:30:16  15         The Court in *Amnesty International* did not have the

12:30:19  16  occasion to consider Section 1806(f).  Again, the Court's

12:30:23  17  ruling on standing here need not disclose any sensitive

12:30:26  18  information.  But 1806(f) accommodates the government's

12:30:30  19  interest.  It accounts for the fact that sensitive information

12:30:33  20  -- if sensitive information were disclosed, that that could

12:30:37  21  present an issue, and in those circumstances in camera review

12:30:41  22  is appropriate.

12:30:42  23         Thank you, Your Honor.

12:30:42  24         THE COURT:  All right.  Thank you.

12:30:46  25         This issue that you presented is of far-reaching

Wikimedia v. NSA

27

12:30:53  1  significance and importance, and I will take into account your

12:30:58  2  arguments and your briefs.  It isn't simply a discovery

12:31:05  3  question.  It's far more than that.  It's really a

12:31:13  4  disagreement about the extent to which we allow our government

12:31:22  5  to undertake certain activities without having to disclose a

12:31:28  6  lot of information about it.

12:31:36  7       It's too bad we live in an angry world filled with

12:31:44  8  people who want to attack us and hurt us.  Then we wouldn't

12:31:48  9  need an NSA, and we wouldn't need to strike this balance

12:31:52  10  between the need for our national security and the need for

12:32:00  11  the public to know what its government is doing.  But we do

12:32:05  12  have to strike that balance, and I have to do that in the

12:32:09  13  first instance.  I'm acutely aware of that.

12:32:14  14       Thank you.

12:32:15  15       MR. GILLIGAN:  Your Honor, may I beg the Court's

12:32:21  16  indulgence to state just one more thing.

12:32:21  17       THE COURT:  If you can do it in a sentence.

12:32:24  18       MR. GILLIGAN:  Section 1810 of FISA, the statute

12:32:26  19  that the plaintiff relies on, a point first raised in their

12:32:29  20  reply brief, and we've not had an opportunity to address, does

12:32:33  21  not provide a cause of action against the government to begin

12:32:35  22  with so held by the Ninth Circuit in the *Al Haramain* case.

12:32:39  23       THE COURT:  All right.  Do this:  Submit briefs.

12:32:42  24  This is Friday.  You can do it by Wednesday.  Submit briefs

12:32:46  25  simultaneously on that issue.

Wikimedia v. NSA

28

12:32:49  1          MR. GILLIGAN:  Wednesday is the Fourth of July, Your

12:32:51  2  Honor.

12:32:51  3          THE COURT:  All right.  Yes, make it Friday, a week

12:32:56  4  from today.  Simultaneous briefs on that issue alone.

12:33:04  5          MR. GILLIGAN:  Thank you, Your Honor.

12:33:05  6          THE COURT:  All right.  I'll take a brief recess so

12:33:08  7  that the Manafort counsel can resume their places and we will

12:33:11  8  proceed with that matter.

12:33:12  9          Court stands in recess for five minutes.

12:33:44  10

11          **(Proceedings adjourned at 12:33 p.m.)**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                       CERTIFICATE OF REPORTER

2

3              I, Tonia Harris, an Official Court Reporter for

4    the Eastern District of Virginia, do hereby certify that I

5    reported by machine shorthand, in my official capacity, the

6    proceedings had and testimony adduced upon the Motion

7    hearing in the case of the **WIKIMEDIA FOUNDATION versus**

8    **NATIONAL SECURITY AGENCY**, Civil Action No. 15-cv-662, in

9    said court on the 29th day of June, 2018.

10             I further certify that the foregoing 29 pages

11   constitute the official transcript of said proceedings, as

12   taken from my machine shorthand notes, my computer realtime

13   display, together with the backup tape recording of said

14   proceedings to the best of my ability.

15             In witness whereof, I have hereto subscribed my

16   name, this March 27, 2020.

17

18

19

20

21   _____

22   Tonia M. Harris, RPR
     Official Court Reporter

23

24

25

                                                              29